IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUL 31 2008

COURT OF APPEALS
DIVISION TWO



| | | |
|---|---|---|
| RAUL BELTRAN, SR. and ANN BELTRAN, husband and wife, | ) ) ) | 2 CA-CV 2007-0169 DEPARTMENT B |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| HARRAH'S ARIZONA CORPORATION, HARRAH'S ENTERTAINMENT, INC., and AK-CHIN INDIAN COMMUNITY, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV0200701600

Honorable William J. O'Neil, Judge

AFFIRMED

---

Gary L. Thomas                                                              Phoenix
                                        Attorney for Plaintiffs/Appellants

Burch & Cracchiolo, P.A.
  By Theodore A. Julian, Jr. and Melissa Iyer                              Phoenix
                                       Attorneys for Defendants/Appellees

---

E S P I N O S A, Judge.

¶1        Appellants Raul and Ann Beltran appeal from the trial court's dismissal of their personal injury complaint against appellees Harrah's Arizona Corporation, Harrah's Entertainment, Inc., and the Ak-Chin Indian Community.[1]  The Beltrans contend, for several reasons, the trial court erred in finding them precluded from bringing their claim in superior court on the ground the claim had already been litigated in the Ak-Chin Indian Community tribal court.  For the reasons below, we affirm.

**Factual and Procedural Background**

¶2        In August 2005, Raul Beltran tripped and fell inside Harrah's Ak-Chin Casino. The casino is owned and operated by the Ak-Chin Indian Community, a federally recognized Indian tribe, pursuant to a gaming compact with the State of Arizona.  The casino is managed by Harrah's Arizona Corporation, a subsidiary of Harrah's Entertainment, Inc. (collectively Harrah's), under an agreement with the Community.

¶3        In July 2006, the Beltrans filed a complaint in the Ak-Chin Indian Community Court (tribal court) against Harrah's and the Ak-Chin Indian Community Development Corporation, a nonprofit tribal entity that is unconnected to the casino.[2]  They alleged a casino employee had negligently tripped Beltran "with her cleaning instrument" while she

---

[1]The complaint also named the following defendants:  Harrah's Ak-Chin; Harrah's Ak-Chin Casino; Harrah's Phoenix Ak-Chin Casino; Harrah's Phoenix Ak-Chin Casino Resort; and Harrah's Operating Company, Inc.  These entities are apparently trade names of Harrah's Entertainment, Inc. but are not legal entities subject to suit.

[2]The entities listed in footnote one were also named as defendants in the Beltrans' complaint in tribal court.

2

was cleaning the floors and claimed the defendants were liable through the doctrine of respondeat superior. In October, the defendants filed a motion to dismiss the complaint on the ground the Community was an "indispensable party not named in the Complaint." After a hearing on that motion, the Beltrans moved to amend their complaint to add the Community as a defendant. The defendants opposed the motion, arguing the one-year statute of limitations for claims against the Community, as set forth in the Ak-Chin Civil Code, had expired.

¶4        In June 2007, the tribal court ruled on both motions and found: the Community, "as the entity having the 'sole proprietary interest' in the casino," was an indispensable party to the litigation; the Beltrans had consciously decided not to name the Community as a defendant in their original complaint because of "doubts [about] whether the Community could be reached due to sovereign immunity issues"; the amended complaint, therefore, did not relate back to the date of the original complaint; and the statute of limitations for claims against the Community had expired. It then dismissed the complaint for failure to join the Community as an indispensable party and entered judgment. The Beltrans appealed the dismissal to the Southwest Intertribal Court of Appeals (SWITCA), which dismissed their appeal for failure to "meet the minimum requirements of filing an appeal" as set out in Rule 11 of the SWITCA Rules of Appeals. The Beltrans moved to vacate the dismissal of their appeal, and that motion apparently is still pending.

3

¶5     In August 2007, the Beltrans filed a complaint in Pinal County Superior Court that was identical to the one they had filed in tribal court except it added the Community as a defendant and included a claim for failure to properly train and supervise. The defendants moved to dismiss the complaint on the grounds the claims were barred by res judicata and collateral estoppel and the Community was an indispensable party that could not be sued in superior court due to its sovereign immunity. The superior court granted the motion, stating: "Plaintiff elected to file his litigation in the Ak-Chin Community Court. Having elected to seek his remedy there, he is collaterally estopped from re-litigating the issue in this Court." The Beltrans now appeal from that decision.

**Recognition of Tribal Court Judgment**

**A. Rules of Procedure**

¶6     The Beltrans first argue the trial court erred in recognizing the tribal court judgment for any purpose "in the first place" because it had not been filed with the superior court pursuant to the Arizona Rules of Procedure for the Recognition of Tribal Court Civil Judgments. The trial court rejected that argument below, stating: "Those rules do not require the registering with this Court of the [tribal court] judgment entered against Plaintiffs in order to preclude the filing of such litigation [in the superior court]." The Beltrans contend the trial court improperly failed to apply those rules, a ruling we review de novo. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, ¶ 18, 181 P.3d 1126, 1131-32 (App. 2008).

4

¶7        The Rules of Procedure for the Recognition of Tribal Court Civil Judgments were adopted by our Supreme Court in 2000 to "govern the procedures for recognition and enforcement by the superior courts of the State of Arizona of trial court civil judgments of any federally recognized Indian tribe." Ariz. R. P. Tribal Ct. Civ. Judgment 1. Prior to 2000, a tribal court judgment would normally be recognized and enforced by Arizona courts only after it had been domesticated through an action in superior court, *see* Ariz. R. Civ. P. 9(e), a potentially time-consuming and burdensome process, *see generally Eschenhagen v. Zika*, 144 Ariz. 213, 218, 696 P.2d 1362, 1367 (App. 1985). Under the rules, however, a tribal court civil judgment may be filed with the clerk of the superior court, notice of the filing served upon the responding party, and proof of service filed with the clerk. Ariz. R. P. Tribal Ct. Civ. Judgment 3. Then, unless the responding party files an objection within twenty days, the tribal court judgment will "be recognized and enforced by the courts of this state to the same extent and shall have the same effect as any judgment, order, or decree of a court of this state." Ariz. R. P. Tribal Ct. Civ. Judgment 4 and 5(a).

¶8        We agree with the Pinal County Superior Court that these rules of procedure are not controlling here. By their express terms, they were intended to provide a ready means of having a tribal court judgment "recognized and enforced." Ariz. R. P. Tribal Ct. Civ. Judgment 1; *see also* Ariz. R. P. Tribal Ct. Civ. Judgment 3 and 4 (referring to party filing judgment as "enforcing party"); *Fragoso v. Fell*, 210 Ariz. 427, ¶ 7, 111 P.3d 1027, 1030 (App. 2005) (intent of drafters determined from plain language of the rule). As the Arizona

5

State, Tribal, and Federal Court Forum stated in an August 1999 memorandum, prepared one year before the rules were formally adopted by our supreme court, the rules were created because "[l]itigants should not bear the burden and experience the delay of commencing a new lawsuit in state court to *enforce* rights already adjudicated in tribal court." (Emphasis added). The appellees in this case did not seek to enforce the tribal court judgment, however, but rather to raise it as an affirmative defense to the Beltrans' action.

¶9        Moreover, there is no indication the rules were intended to be the exclusive means by which a tribal court judgment may be recognized and enforced. *See Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co., N.A.*, 191 Ariz. 516, ¶ 6, 958 P.2d 457, 458 (App. 1998) ("Courts will not read into a [rule] something that is not within the manifest intent of the [framers] as reflected by the [rule] itself."). Traditionally, Arizona courts have recognized tribal court judgments as a matter of comity. *See Tracy v. Superior Court*, 168 Ariz. 23, 34, 810 P.2d 1030, 1041 (1991); *Leon v. Numkena*, 142 Ariz. 307, 311, 689 P.2d 566, 570 (App. 1984). Beltran has produced nothing to suggest the rules were intended to replace this longstanding policy. Indeed, the August 1999 memorandum from the Arizona State, Tribal and Federal Court Forum, cited above, states that the new rules were not intended to "create new or modify existing rights or standards" but rather to "provide a clearer and more efficient method for such recognition and enforcement." We therefore conclude the superior court correctly found it could recognize a tribal court judgment that had not been filed under the rules for facilitating the enforcement of such judgments.

**B. Discretionary Recognition of Tribal Court Judgment**

¶10 The Beltrans also suggest the tribal court judgment should "not [have been] recognized nor given any effect whatsoever" because the tribal court had been "biased" against them, the judgment had been obtained through "deception" by appellees' counsel, and recognition of the judgment would be contrary to Arizona public policy. The trial court did not directly address these claims but implicitly rejected them by recognizing the judgment and giving it preclusive effect. The Beltrans contend the court erred in doing so, maintaining they did not receive "a fair and unbiased resolution of their tort claims in the [tribal court]." Because the decision to recognize a foreign judgment is a matter of discretion, *see Application of Macartney*, 163 Ariz. 116, 119, 786 P.2d 967, 970 (1990), we review the superior court's decision for an abuse of its discretion, *see Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1140 (9th Cir. 2001).

¶11 As already noted, Arizona courts have generally recognized tribal court judgments as a matter of comity. *See Leon*, 142 Ariz. at 311, 689 P.2d at 570. Under that principle, "courts of one jurisdiction will give effect to the laws and judicial decisions of another jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Id.*; *see also In re Gila River Sys. Water Rights*, 212 Ariz. 64, ¶ 64, 127 P.3d 882, 899 (2006). A court is not required to recognize a tribal court judgment under certain conditions, however, including if the parties were not afforded due process in the tribal court, the judgment was obtained through extrinsic fraud, or if recognition of the judgment would be

7

contrary to fundamental public policy. *See* Ariz. R. P. Tribal Civ. Judgment 5; Restatement (Third) of Foreign Relations Law § 482 (1987); *see generally Alberta Sec. Comm'n v. Ryckman*, 200 Ariz. 540, ¶ 17, 30 P.3d 121, 126 (App. 2001).

¶12 The first of the Beltrans' claims of bias and unfairness in the tribal court is, essentially, an allegation that they were denied due process. This claim is based on the terms of the gaming compact between the Community and the State of Arizona, which was negotiated in 2002 as a prerequisite to the Community's establishing and operating a casino with class III gaming activities.[3] *See* 25 U.S.C. § 2710(d)(1)(C). In the compact, the Community agreed, *inter alia*: to "establish written procedures for the disposition of tort claims arising from personal injury or property damage" sustained by patrons of the casino; to "enact such Tribal law as is necessary to implement these procedures"; and to provide injured patrons, upon request, with a "copy of the procedures as well as the name, address and telephone number of the Gaming Facility Operator." The compact defines "Gaming Facility Operator" as "the Community, an enterprise owned by the Community, or such other entity of the Community as the Community may from time to time designate by written notice to the State."

¶13 The Beltrans contend that, before filing their complaint in tribal court, they asked the Community for "the name, address, and telephone number of the Gaming Facility

---

[3]Class III gaming activities include "baccarat, . . . blackjack, . . . electronic . . . game[s] of chance[, and] slot machines of any kind." *See* 25 U.S.C. § 2703(7)(B) and (8).

8

Operator" but were not given this information. They maintain they then filed their complaint believing Harrah's to be the gaming facility operator and thus the only necessary defendant. In its order dismissing the complaint, however, the tribal court found that the Community, not Harrah's, was the gaming facility operator and that the Community was therefore an indispensable party to the litigation. It then dismissed the complaint on the ground the statute of limitations for claims against the Community had expired. The Beltrans now claim their failure to add the Community as a defendant was caused by the Community's failure to comply with the gaming compact by providing them with the name of the gaming facility operator upon request. As a result, they contend the judgment should not be recognized.

¶14        Assuming the Beltrans' claim might support an argument for nonrecognition of the tribal court judgment, *see Wilson v. Marchington*, 127 F.3d 805, 811 (9th Cir. 1997) (listing various grounds for nonrecognition); Ariz. R. P. Tribal Civ. Judgment 5, cmt. 5(c)(2), that claim is not supported by the record. In January 2006, their former counsel wrote the Community to request a "copy of the procedures, including all applicable time limits, as required by . . . the Ak-Chin Indian Tribe—State of Arizona Gaming Compact."[4] There is no evidence, however, that the Beltrans ever asked the Community for the identity of the gaming facility operator. At oral argument, the Beltrans' counsel asserted that former counsel's request for the tort claim procedures amounted to a request for both the procedures

---

[4]The Beltrans' counsel conceded the Community had in fact provided the tort claim procedures as requested.

9

and the identity of the gaming facility operator. We disagree. Although casino patrons are entitled to information about the gaming facility operator upon request, they must actually make such a request under the express terms of the gaming compact.

¶15    The Beltrans also suggest the tribal court judgment should not be recognized because it was obtained through deceptive acts by appellees' counsel. They allege that, after they filed their complaint in tribal court naming numerous Harrah's entities as defendants, Harrah's counsel contacted the Beltrans' counsel and promised to provide the identity of the proper defendant. Instead of doing so, Harrah's moved to dismiss for failure to join the Community as a necessary party. The Beltrans suggest that, but for Harrah's counsel's failure to fulfill his promise to inform them of the proper defendant, their claim would not have been dismissed. Whether or not this would be a sufficient basis to claim the tribal court judgment was obtained through extrinsic fraud, *i.e.*, "fraudulent action by the prevailing party that deprived the losing party of adequate opportunity to present its case to the court," Restatement (Third) of Foreign Relations § 482 cmt. e, the record again does not support the Beltrans' factual assertions.

¶16    In a September 2006 letter to the Beltrans' counsel, Harrah's counsel wrote: "I hope to receive . . . confirmation on the correct legal entity that has the partnership or operating agreement with the Ak-Chin Indian Community. We will ensure that a responsive pleading is timely filed." The Beltrans cite this letter as the sole evidence of the alleged promise to supply them the name of the proper entity to sue. We find nothing in that letter,

10

however, that constitutes any such promise. And even assuming arguendo the letter did embody such a promise, it was dated September 20, 2006. Beltran was injured on August 6, 2005. Thus, the letter was written over a month after the one-year statute of limitations for claims against the Community had expired, and the appellees' informing the Beltrans of the proper party to name as a defendant would not have altered the outcome of their case.

¶17        The Beltrans also argue the tribal court improperly denied their motion to amend the complaint, asserting this decision was contrary to Arizona public policy that "[l]eave to amend shall be freely given when justice requires." Ariz. R. Civ. P. 15(a). But the record once again provides little support for this claim. In denying the Beltrans' motion to amend their complaint, the tribal court found they had intentionally elected not to name the Community as a defendant in the original complaint because of their "doubts [about] whether the Community could be reached due to sovereign immunity issues."[5] It also found that the statute of limitations for claims against the Community had expired. The tribal court then determined the amended complaint did not relate back to the date of the original complaint, citing *O'Keefe v. Grenke*, 170 Ariz. 460, 465-66, 825 P.2d 985, 990-91 (App. 1992), in which Division One of this court found:

> Where a plaintiff knows of the existence and identity of a
> defendant before the statute of limitations runs, and makes a
> conscious election about whom to sue, that plaintiff's deliberate,

_____

[5]The tribal court also noted the Beltrans had properly filed the prerequisite notice of claim against the Community, *see* Ak-Chin Civil Code Title 5, Art. 11, § 1.2.5, presumably alleging the Community was liable for their injuries.

11

though ultimately erroneous or unwise, tactical choice cannot be considered a "mistake" in identity of a party that would allow relation-back of an amended pleading to defeat a statute of limitations defense.

Accordingly, we cannot say the tribal court's denial of the Beltrans' motion to amend and subsequent dismissal of their complaint constituted a denial of due process or violation of Arizona public policy. Consequently, we conclude the superior court did not abuse its discretion in recognizing the tribal court judgment and its preclusive effect.

**Dismissal of the Complaint**

¶18            Finally, the Beltrans contend the superior court misapplied the principles of collateral estoppel in dismissing their complaint.[6] They maintain the tribal court proceedings should not have precluded their action in superior court because the tribal court did not resolve the case on its merits and the superior court complaint named defendants who were not parties in tribal court. We review the dismissal of a complaint for an abuse of discretion, but we review questions of law, such as the application of collateral estoppel, *de novo*. *See*

---

[6]The Beltrans also claim the court misapplied the principles of res judicata, or claim preclusion. The superior court did not specifically mention claim preclusion, although it seems to have invoked this doctrine in its order. In any event, we agree that res judicata is inapplicable here because the dismissal of the Beltrans' claim in tribal court did not constitute a judgment "on the merits." *Dressler v. Morrison*, 212 Ariz. 279, ¶ 15, 130 P.3d 978, 981 (2006); *see Vance v. Vance*, 124 Ariz. 1, 4, 601 P.2d 605, 607 (1979) (res judicata not applicable when claim dismissed in first action for failure to join a party); Restatement (Second) of Judgments § 20 (1980) (same). The superior court's arguable misstatement, however, does not affect its otherwise correct ruling for the reasons stated in this opinion.

12

*Mayer Unified Sch. Dist. v. Winkleman*, No. 2 CA-CV 2007-0126, ¶ 17, 2008 WL 2128064, *5 (Ariz. App. Div. 2 May 19, 2008).

**¶19**        Our supreme court has held that collateral estoppel, or issue preclusion, is applicable when the following criteria are satisfied:  (1) "the issue or fact to be litigated was actually litigated in a previous suit"; (2) "a final judgment was entered";  and (3) "the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986).  "When those elements are present, Arizona permits a new defendant in a subsequent case to use the doctrine defensively to preclude relitigation of an issue." *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 206 Ariz. 447, ¶ 19, 79 P.3d 1206, 1211 (App. 2003)

**¶20**        In this case, the tribal court ruled on two essential issues.  First, it concluded the Community was an indispensable party to the Beltrans' claim.  Second, it found the one-year statute of limitations for claims against the Community, as set forth in the Ak-Chin Civil Code, had expired.  These issues were actually litigated in tribal court, and the Beltrans had a full opportunity to present their arguments at the hearing on Harrah's motion to dismiss. The tribal court entered a final judgment in the case, and both of these issues were essential to that judgment.  Accordingly, both Harrah's and the Community were entitled to raise issue preclusion to prevent the Beltrans from relitigating the same two issues in state court.  *See id*.

13

¶21 Furthermore, even if the tribal court's statute of limitations ruling was not binding on the superior court, *see Corbett v. ManorCare of America, Inc.*, 213 Ariz. 618, ¶ 17, 146 P.3d 1027, 1033 (App. 2006), it is clear the Community cannot be joined as a party in superior court due to its sovereign immunity. As a sovereign Indian tribe, the Community is generally immune from suit in state court, and any waiver of its immunity must be strictly construed in its favor. *See S. Unique, Ltd. v. Gila River Pima-Maricopa Indian Cmty.*, 138 Ariz. 378, 380, 383, 674 P.2d 1376, 1378, 1381 (App. 1983); *see also Filer v. Tohono O'Odham Nation Gaming Entr.*, 212 Ariz. 167, ¶ 6 129 P.3d 78, 80-81 (App. 2006). In the gaming compact, the Community agreed to a limited waiver of its immunity,[7] but the Ak-Chin Civil Code requires that claims against the Community by injured casino patrons "shall be brought within one year after the cause of action accrues and not afterward." Beltran was injured in August 2005 but did not file his action in superior court until August 2007. He did not comply with the conditions of the Community's limited waiver, and the Community is consequently immune from suit.[8] *See id*.

---

[7]In the gaming compact, the Community agreed to "establish written procedures for the disposition of tort claims" and to refrain from "invok[ing] tribal sovereign immunity" for claims "disposed of in accordance with [those] procedures." The Ak-Chin Civil Code contains those procedures.

[8]At oral argument, the Beltrans' counsel argued that, were the case permitted to proceed in superior court, the expiration of the one-year statute of limitations for claims against the Community should not result in the Community's dismissal because the doctrine of "equitable tolling" would apply. Under that doctrine, "'plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *McCloud v. State*, 217 Ariz. 82, ¶ 11, 170 P.3d 691, 696 (App. 2007), *quoting Seitzinger v. Reading Hosp. &*

14

¶22 Accordingly, we find no error in the superior court's dismissal of the Beltrans' complaint: the Community cannot be a party to the litigation and, because it has been found to be an indispensable party to the Beltrans' claim against Harrah's, dismissal of the complaint was necessary pursuant to Rule 19(b), Ariz. R. Civ. P.

¶23 Moreover, the Beltrans themselves chose to bring their claim initially in the tribal court.[9] The tribal court's jurisdiction to resolve the matter has not been contested, and the case was in fact resolved there. The proper forum for correcting any error by the tribal court, therefore, is the tribal appellate court, not the superior court. Although Arizona has a genuine interest in providing its citizens a forum for resolving their tort claims, Arizona courts properly refuse to accept jurisdiction over a case when doing so "would undermine the authority of the tribal courts," *Williams v. Lee*, 358 U.S. 217, 222 (1959), or would "usurp[ the] legitimate exercise of asserted tribal court jurisdiction," *Smith Plumbing Co., Inc. v. Aetna Casualty & Surety Co.*, 149 Ariz. 524, 529, 720 P.2d 499, 504 (1986). Here,

_____

*Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). As discussed above, however, we find the Beltrans' claims of inequitable circumstances to be unsupported by the record, making the doctrine of equitable tolling inapplicable.

[9]We note several jurisdictions have found that, when a gaming compact between a state and a tribe requires the tribe to establish procedures for disposing of tort claims arising from personal injuries to casino patrons and those procedures provide that such claims must be resolved in tribal court, state courts do not have jurisdiction to hear the claim. *See, e.g.*, *Kizis v. Morse Diesel Int'l, Inc.*, 794 A.2d 498 (Conn. 2002); *Diepenbrock v. Merkel*, 97 P.3d 1063 (Kan. App. 2004); *Hatcher v. Harrah's NC Casino Co.*, 610 S.E.2d 210 (N.C. App. 2005). Here, only portions of the Ak-Chin Civil Code are part of the record, and we are unable to determine from those portions whether the Community's procedures require all tort claims arising from injuries to casino patrons to be litigated in tribal court. Because we uphold the trial court's dismissal on other grounds, we do not address this question.

15

the tribal court's authority would have been undermined had the superior court resolved the Beltrans' claim on its merits; thus, dismissal of the complaint was proper. *See Numkena*, 142 Ariz. at 310-11, 689 P.2d at 569-70 (affirming superior court's dismissal of complaint when tribal court had previously resolved the claim); *Agri West v. Koyama Farms, Inc.*, 933 P.2d 808, 813 (Mont. 1997) (finding state court erred "by sustaining jurisdiction in this action when the . . . Tribal Court had previously assumed jurisdiction over the parties and the subject matter of the dispute").

## Disposition

¶24 For the reasons set forth above, the judgment of the superior court dismissing the Beltrans' complaint is affirmed.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
GARYE L. VÁSQUEZ, Judge

16