IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

ANTANELLE DUWYENIE,                 )
                                    )
                Petitioner/Appellee, )        2 CA-CV 2008-0101
                                    )        DEPARTMENT B
            v.                      )
                                    )        O P I N I O N
WILLIAM C. MORAN,                   )
                                    )
            Respondent/Appellant.   )
                                    )

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. DO 2007-399

Honorable Peter J. DeNinno, Judge Pro Tempore

AFFIRMED

---

The Cavanagh Law Firm, P.A.
  By Scott A. Salmon and Christopher Robbins                      Phoenix
                                            Attorneys for Petitioner/Appellee

Ernest E. Shaver and Alan L. Liebowitz                           Phoenix
                                        Attorneys for Respondent/Appellant

---

V Á S Q U E Z, Judge.

¶1 In this child custody action, William Moran appeals from the trial court's order granting sole legal and physical custody of his minor child to the child's mother, Antanelle Duwyenie. Moran argues the court lacked jurisdiction to make a custody determination and abused its discretion by requiring him to post a $20,000 bond as a condition of his visitation with the child. For the following reasons, we affirm.

**Facts and Procedural Background**

¶2 We view the record in the light most favorable to upholding the trial court's decision. *See Little v. Little*, 193 Ariz. 518, ¶ 5, 975 P.2d 108, 110 (1999). Duwyenie and Moran are the parents of CJ, who was born out of wedlock in August 2004. Duwyenie is an enrolled member of the San Carlos Apache Tribe in Arizona, and Moran is an enrolled member of the Rosebud Sioux Tribe, located in South Dakota. They lived together in Globe, Arizona, until their separation in September 2006. Following their separation, they agreed to share custody of CJ, with each having him for a week at a time.

¶3 Moran asked to have CJ for the first week, and Duwyenie agreed. That week, Moran telephoned Duwyenie several times. He first told her he was taking CJ to Phoenix and would be back the next day. The following day, however, he told her they were going to stay for "a couple of days." Moran did not answer the telephone when Duwyenie attempted to call him over the next two days, but he eventually returned her call, claiming he had been leaving his cell phone in his hotel room. In fact, he had taken CJ to South Dakota, where he had filed a custody petition with the Rosebud Sioux Tribal Court ("RSTC"). Duwyenie learned of the petition several days later. Moran telephoned her to

2

confirm that she was home and informed her that his sister's boyfriend, an officer with the Globe Police Department, would stop by to pick up diapers for CJ. When the boyfriend arrived, he served her with an interim custody order issued by the RSTC granting Moran sole custody of CJ.

¶4        In October 2006, the San Carlos Apache Tribe, apparently at Duwyenie's behest, filed a petition for an intertribal judicial conference with the San Carlos Tribal Court, proposing that "the respective Tribal Courts mutually agree not to assert their powers of jurisdiction over this matter" so that the parties might "proceed to Gila County Superior Court to resolve their child custody dispute in a neutral setting." After the tribal courts conferred later the same month, the RSTC dismissed the proceeding before it, citing Moran's initial failure to disclose that "the parties and the child resided in Gila County, Arizona where the child was born." The court found: "The forum that is best suited to hear a custody dispute is the court where the parties resided with the child."[1] In December, however, the Rosebud Sioux Tribal Council, at the request of Moran's uncle, a member of the Council, adopted a resolution asserting the RSTC's exclusive jurisdiction over cases involving its tribal members. Moran moved the RSTC to reconsider its order of dismissal and, relying on the tribal council's resolution, a new RSTC judge accepted jurisdiction and reinstated the case in January 2007.

---

[1]The RSTC apparently anticipated that the San Carlos Tribal Court would take jurisdiction of the case.

3

¶5 Between September 2006 and February 2007, Duwyenie had been granted approximately ten days of visitation with CJ, confined to the Rosebud Reservation. In February 2007, the RSTC authorized more extensive visitation, provided Duwyenie and the San Carlos Tribe did not continue to challenge the RSTC's jurisdiction. In April, Duwyenie dismissed the proceedings in the San Carlos Tribal Court. During a subsequent visitation in September 2007, she returned to Arizona with CJ in violation of the RSTC's temporary custody order.[2]

¶6 Upon returning to Arizona, Duwyenie initiated this custody proceeding in the Gila County Superior Court. After conferring with the RSTC, which declined to relinquish its claim to jurisdiction, and following a hearing, the trial court found that Arizona was CJ's home state and accepted jurisdiction. In June 2008, the parties stipulated to an order determining paternity, child custody, access and child support, which included a provision conditioning Moran's visitation on his posting a $20,000 bond. This appeal followed.

---

[2]The RSTC's order stated that Duwyenie's "visitation off the Rosebud reservation shall be contingent upon the court receiving an order from the San Carlos Tribal Court recognizing this Court's orders and agreeing not to modify them and a voluntary withdrawal of [Duwyenie's] complaint for custody in the San Carlos Apache Tribal Court." Although she dismissed the proceeding before the San Carlos Apache Tribal Court, Duwyenie apparently never obtained an order from that court recognizing the RSTC's jurisdiction.

**Discussion**

**Jurisdiction**

¶7        Moran first contends the trial court "improperly exercised jurisdiction over this matter" in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which governs the issue of jurisdiction in this case. *See* A.R.S. §§ 25-1001 through 25-1067.[3]   A trial court's jurisdiction is a matter of law that we review de novo. *R.A.J. v. L.B.V.*, 169 Ariz. 92, 94, 817 P.2d 37, 39 (App. 1991).

¶8        An Arizona court "has jurisdiction to make an initial child custody determination if" Arizona "is the home state of the child on the date of the commencement of the proceeding." § 25-1031(A)(1).   A home state is "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before

---

[3]In his reply brief, Moran appears to argue for the first time that the trial court should have recognized the Rosebud Sioux Tribal Council's resolution granting jurisdiction to the RSTC under the principle of comity. *See Brown v. Babbitt Ford, Inc.*, 117 Ariz. 192, 198, 571 P.2d 689, 695 (App. 1997) (defining comity as the principle that "the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect").   We generally do not address arguments raised for the first time in the reply brief. *See State v. Ruggiero*, 211 Ariz. 262, n.2, 120 P.3d 690, 695 n.2 (App. 2005).   In any event, as we noted in *Beltran v. Harrah's Ariz. Corp.*, 535 Ariz. Adv. Rep. 30, ¶ 11 (Ct. App. Jul. 31, 2008), the principle of comity does not apply "under certain conditions . . . including if the parties were not afforded due process . . . or if recognition of the judgment would be contrary to fundamental public policy."   Here, the trial court found that both the proceedings of the RSTC and the tribal resolution violated due process.   And, to the extent that either were in conflict with the UCCJEA, they were contrary to its "fundamental purpose of . . . establish[ing] the certainty of home state jurisdiction" as enacted in § 25-1031. *See Welch-Doden v. Roberts*, 202 Ariz. 201, ¶ 33, 42 P.3d 1166, 1173 (App. 2002).

the commencement of a child custody proceeding, including any period during which that person is temporarily absent from that state." § 25-1002(7)(a).

¶9 Although CJ had not lived in Arizona for six months prior to the current proceedings, Arizona was indisputably his home state at the time Moran commenced custody proceedings with the RSTC. Initial jurisdiction was therefore vested in the Arizona courts, *See* A.R.S. § 25-1031. We are not persuaded that, under the circumstances of this case, Arizona lost its home-state status through Moran's unauthorized—and arguably criminal—conduct in removing CJ from the state.[4] To find otherwise would defeat one of the core purposes of the UCCJEA, the deterrence of child abductions. *See* Uniform Child Custody Jurisdiction and Enforcement Act § 101, cmt., 9 U.L.A. 657 (1999) (UCCJEA should be interpreted according to purposes of its precursor, the Uniform Child Custody Jurisdiction Act (UCCJA), including deterring abductions of children); *Both v. Superior Court*, 121 Ariz. 381, 384, 590 P.2d 920, 923 (1979) (allowing new state to which child wrongfully taken automatically to take jurisdiction defeats purpose of UCCJA to "deter the practice . . . of taking the child and fleeing to another jurisdiction"); *Curtis v. Curtis*, 574 So. 2d 24, 30 (Miss. 1990) (where child wrongfully removed from home state, "involuntary residence [in a foreign state] does not generate so much as a single tick of the UCCJA's six consecutive months clock").

---

[4]At the time Moran removed CJ from Arizona, his paternity had not been formally established. Pursuant to A.R.S. § 13-1302(B), "[i]f a child is born out of wedlock, the mother is the legal custodian of the child . . . until paternity is established." And criminal custodial interference involves "taking, enticing, or keeping from lawful custody any child . . . who is entrusted by authority of law to the custody of another person." § 13-1302(A)(1).

6

¶10 Furthermore, Duwyenie promptly initiated custody proceedings with the San Carlos Tribal Court after CJ's abduction, with the apparent intent to pursue an action in Gila County Superior Court once the intertribal dispute had been resolved. *See Agnello v. Becker*, 184 Conn. 421, 429, 440 A.2d 172, 176 (Conn. 1981) (Under UCCJA, "New Jersey clearly had jurisdiction" where "[t]he evidence at trial indicated that before the . . . abduction by the defendant, the child had lived her entire life in New Jersey, and that the plaintiff instituted his custody suit in New Jersey within a month after the abduction"). In any event, Moran does not challenge on appeal the trial court's express finding that Arizona is CJ's home state.

¶11 Moran maintains however that the trial court "was required . . . not to exercise jurisdiction" because "[t]he RSTC proceeding ha[d] been going on for more than one year before [Duwyenie] filed her action in Gila County Superior Court . . . [and] the RSTC . . . [had] held that it had jurisdiction over . . . the subject matter of this proceeding."[5] He relies on § 25-1036(A), which provides in part:

> [A] court of this State shall not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless

---

[5]Moran concedes the trial court's exercise of jurisdiction "would have been far more easily justified" had Duwyenie "filed her paternity action in the Gila County Superior Court in the Fall of 2006." Any delay was, however, at least in part, the result of the RSTC's reassertion of jurisdiction over the case and its order that "visitation [with CJ] must be conditioned on an agreement by [Duwyenie] not to attempt . . . to deprive [it] of jurisdiction."

7

the proceeding has been terminated or is stayed by the court of the other state.[6]

But Moran's reliance on this section is misplaced. First, to the extent he argues his first-in-time filing takes precedence over Arizona's home-state jurisdiction, that argument was rejected by Division One of this court in *Welch-Doden v. Roberts*, 202 Ariz. 201, ¶ 46, 42 P.3d 1166, 1176 (App. 2002). There, the child had lived with the mother in both Arizona and Oklahoma before the mother filed for dissolution and custody in Arizona and the father filed a petition for divorce and custody in Oklahoma. *Id.* ¶ 4. The trial court rejected the mother's claim that "Arizona should have jurisdiction as her filing was first-in-time," because it concluded Oklahoma was the child's home state. *Id.* ¶¶ 7, 46. In affirming the trial court's decision, Division One noted: "The drafters made it clear that the [UCCJEA] was to give priority to a finding of home state jurisdiction over any other jurisdictional provisions." *Id.* ¶ 30. The other "substantive factors" for determining jurisdiction are considered "*only* if no state qualifies as a 'home state.'" *Id.* ¶ 31.

**¶12** Second, Moran ignores the requirement "that the first-in-time filing must be in a state 'having jurisdiction substantially in conformity with [the UCCJEA].'" *Id.* ¶ 47, *quoting* A.R.S. § 25-1036(A); *see also* § 25-1004(C).[7] As noted above, the RSTC and San

---

[6]Under Arizona's version of the UCCJEA, "[a] court of this state shall treat a tribe as if it were a state of the United States." A.R.S. § 25-1004(B).

[7]Section 25-1004(C), similarly provides that: "A child custody determination made by a tribe under factual circumstances in substantial conformity with the jurisdictional standards of this chapter must be recognized and enforced under [§§ 25-1051 through 25-1067]."

8

Carlos Tribal Court judges conducted an intertribal court judicial conference to discuss which court was best suited to determine custody. Following the conference, the RSTC issued its order dismissing the RSTC custody proceeding. In doing so, the court expressly noted Moran's complaint for paternity and custody had "failed to mention that the parties and the child resided in Gila County, Arizona where the child was born." The court further noted with respect to Moran's conduct: "A party should not remove a child from a jurisdiction by deceit in an attempt to get a better result. A party should be forthright with a court when asking for interim custody and asking the court to take jurisdiction over a custody matter." Nothing changed to provide a valid basis under the UCCJEA for the RSTC's jurisdiction, even though it subsequently reinstated the proceeding.[8] Thus, there is simply no merit to Moran's assertion that the trial court improperly exercised jurisdiction "after a full year of

---

[8]In its February 27, 2007, Memorandum Decision and Order after the case had been reinstated, the RSTC expressly noted, "[T]he Court believes it only fair for [Duwyenie] to be given her chance to repair her bond with the child that has been torn asunder by the improper actions of the father." The order further provided in pertinent part that the tribal council had

> passed a resolution purporting to grant this Court the exclusive jurisdiction to adjudicate child custody proceedings involving R[osebud] S[ioux] T[ribal] children wherever located or domiciled. Based almost exclusively upon this action the Chief Judge of the [RSTC] granted reconsideration of [the prior judge]'s order and upheld [the tribal c]ourt's jurisdiction over this action.

However, despite noting the resolution was "probably violative of . . . federal law," the special judge concluded, "This Court has a duty from this point on to preserve and protect its jurisdiction in this case until the Rosebud Supreme Court . . . rules otherwise."

9

litigation over the same issues in a foreign court, litigation that was still ongoing, [and] was not . . . contrary to the specific language of § 25-1036."

¶13        Because Arizona had home state jurisdiction, the RSTC did not have jurisdiction "'substantially in conformity with [the UCCJEA].'" *Welch-Doden*, 202 Ariz. 201, ¶ 47, 42 P.3d 1166 at 1170, *quoting* § 25-1036(A). As in *Welch-Doden*, Moran's first-in-time filing granted him no rights. Accordingly, the trial court did not err by rejecting his contention that a first-in-time filing conferred initial jurisdiction upon the RSTC. *Id.* ¶ 47.

¶14        Nor are we persuaded by Moran's contention that § 25-1038 required the trial court to decline jurisdiction because of Duwyenie's "unjustifiable conduct" in violating the RSTC's temporary orders and returning to Arizona with CJ.[9] In part, this section provides that "if a court of this state has jurisdiction under this chapter *because* a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction." § 25-1038(A) (emphasis added). But regardless of any impropriety in Duwyenie's conduct, this section is not applicable for two reasons. The basis for the trial court's jurisdiction was Arizona's status as CJ's home state, a status established by CJ's presence here for the first two years of his life, prior to and entirely independent of the conduct to which Moran objects. Thus, the court did not have jurisdiction "because" of Duwyenie's conduct. *See* § 25-1038(A); *cf. In re Guardianship of Rodgers*, 100 Ariz. 269,

---

[9]At oral argument, Moran placed great emphasis on Duwyenie's conduct in allegedly deceiving the RSTC and violating its orders. Although we do not condone her conduct, to the extent the RSTC lacked jurisdiction, those orders were nonetheless void. *See Solomon v. Findley*, 165 Ariz. 45, 46, 796 P.2d 477, 478 (App. 1990) ("any action taken by a court which does not have jurisdiction is void and a nullity").

10

276, 413 P.2d 744, 749 (1966) ("[W]hile an act of misconduct or malfeasance should be related to the fitness of a parent to be a suitable custodian, such does not, as an absolute rule, prohibit a court from reexamining a sister state custody decree."). Furthermore, as noted above, the RSTC lacked any valid basis for exercising initial jurisdiction under the UCCJEA, as required for the trial court to decline jurisdiction under § 25-1038.[10] *See* § 25-1038(A)(3) (state may exercise jurisdiction despite unjustifiable conduct if no other state would have jurisdiction).

¶15 In sum, because Moran neither challenges the trial court's finding that Arizona is CJ's home state, nor provides any authority to support his contention that another court may exercise jurisdiction pursuant to the UCCJEA merely by asserting its jurisdiction and conducting proceedings over a period of time, we conclude the trial court properly exercised jurisdiction in this case. *See* § 25-1031(A)(1).

**Requirement of bond as condition of visitation**

¶16 Finally, Moran contends the trial court abused its discretion by requiring him to post a cash or property bond as a condition of his visitation with CJ. A party cannot generally appeal from an order that it consented to have entered against it. *Cofield v. Sanders*, 9 Ariz. App. 240, 242, 451 P.2d 320, 322 (1969); *see Schlecht v. Schiel*, 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953) ("one who deliberately leads the court to take certain

---

[10]By contrast, this section—enacted in South Dakota as SD Codified Laws § 26-5B-208 (2005)—would likely have applied to any jurisdictional claim by a South Dakota court. In such a case, the sole basis for jurisdiction would have been CJ's presence in the state as a result of Moran's conduct, and another state—Arizona—would have had home state jurisdiction under A.R.S. § 25-1031(A)(1).

11

action may not upon appeal assign that action as error"), *disapproved in part on other grounds*, *Tumbling-T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, ¶ 23, 5 P.3d 259, 266 (App. 2000); *see also Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465-66, 957 P.2d 1007, 1008-09 (App. 1997) (declining to consider merits of appeal where parties had stipulated to final judgment in order to create an "appealable order").

¶17 On February 11, 2008, Moran and Duwyenie filed a stipulation to vacate the contested custody hearing, stating they had "reached a full resolution of all contested issues, and ha[d] made a record of that settlement conforming to the requirements of Rule 80(d), Ariz. R. Civ. P." The stipulation further provided that they would "submit a form of order embodying their agreement within 30 days of the date of this Stipulation." In a subsequent stipulation filed with the court on June 3, 2008, they once again acknowledged that they had entered into a binding agreement on February 8, 2008, containing the court's prior order that: "[Moran] shall post a bond of $20,000 in a form approved by the court. Such bond shall be made payable to petitioner, Antanelle Duwyenie, and shall be posted prior to the commencement of any access by [Moran] with [CJ]." And the trial court's final order included exactly the same language.

¶18 At oral argument, both parties suggested that their stipulation was not the result of any agreement but merely acknowledged the existence of the previous court order. Nonetheless, after the parties informed the trial court they had reached an agreement, Moran failed to object to the bond or raise the issue with the court in any way. Neither does he allege any of the exceptions to the rule barring his appeal from an order to which he arguably

12

consented.[11] He has therefore waived this argument. *See Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, ¶ 15, 99 P.3d 1030, 1035 (App. 2004) (arguments raised for first time on appeal deemed waived); *Cofield*, 9 Ariz. App. at 242, 451 P.2d at 322.

**Disposition**

¶19 For the reasons stated, we affirm the judgment of the trial court. Duwyenie requests attorney fees on appeal pursuant to A.R.S. § 25-324. Before awarding fees under this section, we are required to "examine both the financial resources and the reasonableness of the positions of each party." *Leathers v. Leathers*, 216 Ariz. 374, ¶ 22, 166 P.3d 929, 934 (App. 2007). Here, the record establishes that Moran's gross income is more than eighty percent greater than Duwyenie's. *See Gore v. Gore*, 169 Ariz. 593, 596, 821 P.2d 254, 257 (App. 1991) (awarding attorney fees on appeal to mother where father's income was "77 percent greater"). Furthermore, of the two issues Moran raises on appeal, one is precluded by his stipulation to the trial court's final order, and the other is based on an interpretation of the UCCJEA at odds with its plain text and entirely unsupported by case law. We therefore grant Duwyenie's unopposed request for an award of reasonable attorney fees—and

---

[11]The exceptions to this rule include "lack of consent to the judgment or lack of jurisdiction over the subject matter, or where the judgment was obtained by fraud, collusion or mistake, or where the judgment adversely affects the public interest." *Cofield v. Sanders*, 9 Ariz. App. 240, 242, 451 P.2d 320, 322 (1969) (citation omitted). Other than his claim that the trial court lacked subject matter jurisdiction, which we have rejected, Moran has raised none of these exceptions on appeal.

also grant her costs on appeal as the prevailing party—upon her compliance with Rule 21, Ariz. R. Civ. App. P.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge