NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MONIQUE N. CLEARY, *Petitioner/Appellant/ Appellee*,

*v.*

EDWIN A. CORDERO, *Respondent/Appellee/Appellant.*

Nos. 1 CA-CV 16-0776 FC
1 CA-CV 17-0019 FC
(Consolidated)

FILED 10-31-2017

Appeal from the Superior Court in Maricopa County
No. FC2013-072282
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

APPEARANCES

Monique N. Cleary, Waddell
*Petitioner/Appellant/Appellee*

Edwin A. Cordero, Surprise
*Respondent/Appellee/Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

---

**D O W N I E**, Judge:

**¶1**        In these consolidated appeals, Monique Cleary ("Mother") challenges the superior court's order prohibiting contact between her then-boyfriend, Ken Safsten, and Edwin Cordero ("Father"), as well as a contempt finding and an award of attorneys' fees.  Father appeals the court's spousal maintenance award.  With the exception of the spousal maintenance award, which we vacate and remand, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Mother was a student and homemaker during the parties' marriage, and Father served in the military.  In 2013, Father retired from the military and was declared 100% disabled.

**¶3**        At the time Mother filed her dissolution petition, Father received $3,146 per month in disability income and $1,500 per month in retirement income.  He also received educational benefits under the Post-9/11 GI Bill — 18 months of which he had already transferred to Mother so she could pursue a graduate degree.  Father later reassigned a portion of those benefits to himself and the parties' two children.

**¶4**        The parties reached an agreement regarding joint legal decision-making and parenting time pursuant to Arizona Rule of Family Law Procedure 69.  They also agreed to divide Father's retirement benefits via a Qualified Domestic Relations Order ("QDRO"), with Father paying Mother $630 per month until the QDRO was entered.  The parties agreed they would have no telephonic or face-to-face contact with one another except for emergencies and that Father and Safsten would "have no contact whatsoever with each other."

**¶5**        The parties litigated the issues of spousal maintenance and child support at trial.  The court awarded Mother $800 per month in spousal maintenance and ordered Father to pay $520.77 per month in child support.

¶6         Mother subsequently moved to hold Father in contempt and to suspend his parenting time based, in part, on his alleged violation of the order that he have no contact with Safsten.  Father filed a response and "cross-motion for contempt," arguing, as relevant here, that Mother had "caused Mr. Safsten and Father to be in close proximity."  After conducting an evidentiary hearing, the court concluded Mother had caused Father and Safsten to have contact and ordered:

> **IT IS ORDERED** that Mother be responsible for making sure that the parties' minor children do not participate in activities with [Safsten's] children at the same time.

> **IT IS FURTHER ORDERED** granting Father's Counter-Petition for Contempt. Mother's violation was not only contemptuous; it was unreasonable, justifying an award of attorneys' fees.

¶7         After an evidentiary hearing on issues not germane to this appeal, the court entered a dissolution decree.  It then entered final judgment on the contempt finding and no-contact order, stating:

> Father and Ken Safsten will have no contact, telephonically, in person, or otherwise.  Mother agreed that Mr. Safsten would not have any contact with Father.  Therefore, Mother will ensure that Mr. Safsten knows when and where the children are to be with Father so that Mr. Safsten avoids being present.  The exception is at public events, including school events, or court proceedings. . . . The message to Mother and Father is that he or she is to walk away and avoid any confrontation.  Mother is responsible for Mr. Safsten's behavior since she agrees to limit his contact with Father.

Both parties filed notices of appeal after final judgment was entered.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### I.    Mother's Appeal

¶8         Mother first contends the superior court violated Safsten's rights by entering the no-contact order.  We agree with Father that Mother lacks standing to litigate this issue.

¶9 Mother does not argue the no-contact order caused her injury, asserting instead that it violated Safsten's rights. But to establish standing, a party must allege a distinct and palpable injury particular to herself, *Arizona Association of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 13, ¶ 17 (App. 2009), which Mother has failed to do. We therefore do not address this issue further.[1]

¶10 Mother next contends the no-contact order forced her to be "legally and broadly responsible" for Safsten's actions. But Mother agreed to the original no-contact order as part of her Rule 69 agreement. On appeal, she may not challenge an order she consented to in the superior court. *See Duwyenie v. Moran*, 220 Ariz. 501, 506, ¶ 16 (App. 2009); *see also In re Marriage of Thorn*, 235 Ariz. 216, 223, ¶ 35 (App. 2014) ("Having successfully persuaded the court to follow this approach, [the party] cannot now argue it was erroneous."). Moreover, the orders require only that she ensure the children "do not participate in activities with [Safsten's] children at the same time" and that Safsten "knows when and where the children are to be with Father." These provisions stem from the finding that Mother "caused Father and [Safsten] to cross paths" during Father's parenting time. Mother does not challenge that finding on appeal, which is amply supported by the record.

¶11 Although Mother also challenges the contempt finding, civil contempt orders are not appealable and may only be challenged by special action. *Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7 (App. 2010). We may, however, exercise our discretion to consider the issue as a special action, *Peace v. Peace*, 234 Ariz. 546, 547, ¶ 4 (App. 2014), which we do here. We review a contempt finding and any resulting sanction for an abuse of discretion. *Stoddard*, 224 Ariz. at 154, ¶ 9.

¶12 The superior court found that: (1) Mother ran the swim team that the parties' children and Safsten's children belonged to; (2) Mother placed them on the same team, resulting in Safsten being present at the

---

[1] Mother filed a Procedural Motion to Enlarge the Record on Appeal or, in the Alternative, Take Judicial Notice of Related Court Proceedings. That motion was previously denied to the extent it sought to enlarge the record on appeal, but was referred to the merits panel vis-à-vis the request for judicial notice. Because Mother may not litigate Safsten's rights in this proceeding, we decline to take judicial notice of the proceedings between him and Father. We express no opinion about Mother's ability to seek modification of the no-contact order on a prospective basis based on the other proceeding.

same time as Father; and (3) Mother deliberately sent Safsten to the pool during Father's parenting time, causing the two to come in contact. Each of these findings is supported by the record. Indeed, Mother admitted she "set up" the swim team and that she and Safsten arranged for their children to participate at the same time. The record also indicates Safsten regularly attended swim practices and competitions, knowing Father would be present.

¶13         Mother also contends the fee award was improper. But A.R.S. § 25-414(A) authorizes the court to sanction those who refuse to comply with a visitation or parenting time order by holding the violator in contempt and assessing court costs and fees. A.R.S. § 25-414(A)(1), (C). The superior court thus did not abuse its considerable discretion by awarding Father the fees he incurred in connection with hearings related to this issue.

¶14         Finally, although Mother contends the court should have ruled on her contempt petition within 60 days, she did not raise this issue in the superior court and has therefore waived it. *See* Ariz. Const. Art. 6, § 21; *Klinger v. Conelly*, 2 Ariz. App. 169, 172 (1965) (arguments not first raised in superior court may not be raised on appeal). Furthermore, the remedy would be to order the family court to rule, which it has already done.

## II.    Father's Appeal

¶15         Father's appeal challenges the amount and duration of the spousal maintenance award. We review an award of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). We view the evidence in the light most favorable to the party awarded maintenance and will affirm the judgment if there is any reasonable evidence to support it. *Id.*

¶16         When determining the duration and amount of spousal maintenance, courts must balance the factors listed in A.R.S. § 25-319(B). *Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). Here, the court's order reflects its consideration of the statutory factors. We do not reweigh the evidence on appeal to determine whether a different amount of maintenance would be supported by the evidence, as Father suggests. The court acted within its discretion in basing the award on "the amount of the value of the GI benefits that Mother received since service of her Petition for Dissolution." However, the record does not support the 18-month duration.

¶17 Mother admitted that she continued to receive benefits through at least May 2014 and that she would graduate in May 2015. Even viewing the evidence in the light most favorable to Mother, the reassignment did not deprive her of 18 months of GI benefits. Mother also failed to present evidence that she needed 18 months of maintenance to become self-sufficient. *See Schroeder v. Schroeder*, 161 Ariz. 316, 322 (1989) ("If the purpose of spousal maintenance is rehabilitation, the duration of the award at the time of decree represents a prediction of when self-sufficiency will be accomplished."). On the contrary, she testified she would be able to join the workforce upon graduation. Although the court has broad discretion in assessing the need for spousal maintenance, "there still must be some support in the record for the court's determination." *In re Marriage of Hinkston*, 133 Ariz. 592, 594 (App. 1982). Because the record lacks such support for the 18-month duration of the spousal maintenance award, we vacate the award and remand that issue to the superior court for reconsideration.[2]

## III.   Attorneys' Fees and Costs on Appeal

¶18 Both parties request an award of attorneys' fees pursuant to A.R.S. § 25-324(A). However, Mother represented herself on appeal, and after considering the parties' financial resources and the reasonableness of their positions, *see Keefer v. Keefer*, 225 Ariz. 437, 441, ¶ 16 (App. 2010), we deny Father's request.[3] As the successful party, though, Father is entitled to recover his taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[2]   Father also contends the court improperly included his disability income when calculating spousal maintenance, but the record does not support that contention. The court stated in two separate rulings that Father's disability income was excluded. Father also argues transferred GI benefits "may not be treated as marital property, or the asset of a marital estate, subject to division in a divorce or other civil proceeding." 38 U.S.C. § 3020(f)(3). But the court did not treat the GI benefits as marital property or subject them to division; it instead found that Father's reassignment of benefits left Mother unable to meet her needs until she obtained her degree.

[3]   Father was represented by counsel through the briefing stage of this appeal.

## CONCLUSION

¶**19** For the reasons stated, we vacate and remand the spousal maintenance award, but we otherwise affirm the judgment of the superior court.

