258 P.3d 164

**In re the Marriage of Deborah J. MANGAN, Petitioner/Appellant,**

**v.**

**John V. MANGAN, Respondent/Appellee.**

**No. 1 CA–CV 10–0726 A.**

Court of Appeals of Arizona, Division 1, Department E.

May 26, 2011.

Ariano & Reppucci, P.L.L.C. By Ryan M. Reppucci, Phoenix, Attorney for Petitioner/Appellant.

Moshier Law Firm, P.C. By Jennifer K. Moshier, Peter J. O'Connor, Phoenix, Attorney for Respondent/Appellee.

## OPINION

WINTHROP, Judge.

¶ 1 This is an accelerated appeal pursuant to Rule 29 of the Arizona Rules of Civil Appellate Procedure ("ARCAP"). Petitioner/Appellant, Deborah J. Mangan ("Mother"), appeals the family court's signed minute entry order finding that Arizona has home state jurisdiction to hear and decide the petition of Respondent/Appellee, John V. Mangan ("Father"), to modify custody, parenting time, and child support. Mother argues that the petition should have been dismissed because, under Arizona Revised Statutes ("A.R.S.") section 25–1032 (2007), the court lost jurisdiction over the matter when she and the parties' children moved to New Mexico. Mother also challenges the court's decision to award attorneys' fees to Father. Concluding that the family court had exclusive, continuing jurisdiction to modify its initial child custody order and did not abuse its discretion in deciding to award attorneys' fees to Father, we affirm.

## BACKGROUND [1]

¶ 2 Mother and Father were married in 2001 and had two children. The parties separated in mid-March 2006, when Mother and the children left Arizona temporarily and moved back East.[2] In May 2006, Mother filed a petition for dissolution of marriage in Arizona, conceding at that time Arizona was the children's "home state." In October 2006, the family court, after determining it had initial jurisdiction pursuant to A.R.S. § 25–1031(A)(1), entered a decree of dissolution of marriage. The court awarded Mother sole custody of the children, designated Mother as the primary residential parent, and ordered that Father have parenting time and periodic telephonic access to the children. Thereafter, each party filed any documents related to child custody, parenting time, or

---

1. We review the record in the light most favorable to upholding the family court's decision. *See Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999).

2. In the brief time that Mother and the children lived back East, they lived in New Jersey, Pennsylvania, and New York.

child support in Maricopa County Superior Court.

¶3 Mother and the children moved back to Arizona, and on February 1, 2008, Father filed a petition for post-decree mediation, alleging that Mother was "blocking [his] visitation and communication" with the children. The family court ordered the parties to meet for mediation in March 2008. Although the parties did not reach a formal agreement in mediation, they did reach an informal agreement, to which Mother unilaterally chose not to adhere. At about that time, Mother purportedly informed Father that she planned to move to New Mexico.[3] After seeing the children in mid-July 2008, Father was unable to contact the children again for approximately 650 days.

¶4 On July 30, 2008, Father filed a petition to enforce parenting time, and the family court ordered the parties to appear at an evidentiary hearing regarding the petition on September 26, 2008. Mother did not appear at the hearing, however, and the court found she was evading service and granted permission for Father to serve her by publication in New Mexico.[4]

¶5 The court scheduled another enforcement hearing for December 12, 2008, and Mother was served by publication but again did not appear. The court found Mother in contempt of court for failure to appear and failure to abide by the terms of the parties' custody agreement.

¶6 On December 22, 2008, Father filed a petition to modify custody, parenting time, and child support, in which he claimed that Mother had "unlawfully blocked ALL contact between Father and [the] children." Father, however, again encountered difficulty locating and serving Mother, who relocated at least two more times within New Mexico after arriving there.[5] In January 2009, the family court granted a motion to withdraw filed by Mother's counsel, who cited in part Mother's failure to communicate.

¶7 On February 18, 2010, Father filed a renewed petition to modify custody, parenting time, and child support, in which he sought sole legal custody of the children and moved for a warrant to take custody of the children using reasonable force. At a return hearing on April 8, 2010, at which Mother appeared telephonically and conceded she had been personally served, the family court issued temporary orders, ordering in part that the parties participate in a parenting conference and Mother provide Father with telephone access to the children and parenting time, with the exchanges of the children to occur in Flagstaff. The court also set a temporary orders/status hearing for May 14, 2010, ordered both parties to be present in person, and set a trial date for August 2, 2010.

¶8 On April 20, 2010, Mother, through new counsel, filed an accelerated motion to transfer jurisdiction,[6] arguing that the children had lived in New Mexico since April 2008,[7]

---

3. In her opening brief, Mother states that she "moved to New Mexico with the children after filing a Notice to Move on May 19, 2008." The portion of the record she cites as support for this statement, however, is a notice filed on May 19, 2008, by the law firm representing her, indicating that the firm had moved to a new address in Phoenix. At trial, Mother testified that she provided Father with sixty days' notice of the move to New Mexico by sending two letters to him beginning in April 2008, and she produced a copy of a letter she purportedly sent dated April 2, 2008. In his testimony at trial, Father acknowledged receiving a certified letter from Mother sometime in July 2008, *after* Mother and the children had moved, but he stated the letter provided no specific contact address in New Mexico. Mother has not directed this court to any documents filed in the record that confirm she complied with A.R.S. § 25–408 (2007) in providing Father with prior notice of the move.

4. The record indicates Mother informed her counsel in September 2008 that she had moved. Mother filed an application for writ of garnishment in Maricopa County Superior Court that same month.

5. In total, Mother acknowledged having at least nine different addresses from 2006 to August 2, 2010, the date of trial.

6. Mother's counsel, Dennis Riccio, filed a notice of limited appearance at the same time he filed the motion to transfer jurisdiction. On June 8, 2010, Mr. Riccio filed a notice of appearance, and he continued to represent Mother through the August 2 trial.

7. Mother had previously represented to the court that she and the children had moved in July 2008.

and challenging the family court's jurisdiction.[8] In a minute entry filed April 26, 2010, the court (the Honorable Carey Snyder Hyatt, presiding) denied the motion.

¶ 9 At the May 14, 2010 temporary orders/status hearing before Judge Hyatt, Mother again contested jurisdiction. The court ruled that Arizona had not relinquished jurisdiction over the custody issues involving the children, explaining its reasoning in part as follows:

> And what happened was that even by mom's own information, she left with [the] children in July of '08. And that's when dad had said, testified earlier, that that was really the last time he's had other than telephonic contact with [the children].
>
> He immediately filed an expedited request to enforce, which unfortunately didn't get resolved until December of '08. But at that point in time, your client was served, she had notice of the hearing, she was found in contempt, and to this day, is still in contempt of the Court's parenting time orders from back in, goodness, 2006, I guess they were.
>
> So the mere fact that the passage of time [has occurred] cannot undermine this Court's home state jurisdiction under the [Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")], when the whole time she's been in contempt of court for not following through with parenting time orders.
>
> So that's why I indicated that, and will indicate here today, that Arizona has not relinquished its home state jurisdiction over the custody issues involving the child[ren]. She's been [in] contempt for a year and a half.
>
> And if some action was ever started in New Mexico, you know, I could certainly counsel with the New Mexico judge, but I highly doubt that they would take away or undermine or overrule Arizona's home state jurisdiction. We've still got it.

The court also issued various temporary orders to ensure that Father receive parenting time.

¶ 10 In June 2010, Mother obtained an order of protection from the superior court after making allegations of abuse against Father and stating that she had contacted the FBI and the Scottsdale Police Department after allegedly discovering on May 6 that Father's website was linked to illegal pornography sites that appeared to depict violence against underage girls.[9] Mother also informed the family court that Father's counsel had allegedly engaged in improper ex-parte communications with the parties' parenting conference provider, and she filed petitions for contempt against Father, alleging he had failed to pay child support and made misrepresentations to the court. Mother sought sanctions and increased child support.

¶ 11 Father's counsel responded by seeking sanctions pursuant to Rule 11, Ariz. R. Civ. P., against Mother and her counsel regarding the notice of purported ex-parte communication. Father also sought a hearing regarding Mother's "false" "allegations of abuse and association with offensive internet materials" and a status conference regarding her allegations with regard to the parenting conference provider, and he sought to quash the order of protection. After a hearing on June 25, 2010, the superior court quashed the order of protection based on a lack of evidence.

¶ 12 On August 2, 2010, the court (Judge *Pro Tem* Mina E. Mendez, presiding) held an evidentiary hearing on Father's petition to modify custody, parenting time, and child support. At the conclusion of the hearing, the court issued a preliminary ruling directing that the children be returned to Father and otherwise took the matter under advisement.

---

8.  In the motion, Mother stated that "no visitation has taken place since April of 2008."

9.  A detective with the Scottsdale Police Department Computer Crimes Unit investigated Mother's claims before she sought the order of protection and found "no evidence of illegal activity or criminal activity" related to Father's blog. The FBI agent contacted by Mother testified at trial that he conducted no formal investigation based on the information Mother provided because he concluded that "there wasn't any solid evidence" to support such an investigation.

¶ 13 In a comprehensive and thoughtful signed minute entry filed August 27, 2010, the family court issued its ruling reaffirming that Arizona is the home state of the children and concluding it had not relinquished the jurisdiction it had obtained pursuant to A.R.S. § 25–1031(A)(1). The court denied Mother's motions and petitions, addressed Father's motions and petitions, and as to the petition to modify custody, ordered that the parties have joint legal custody and Father have primary residential custody, with Mother to receive parenting time as specified.[10] The court also directed Father's counsel to submit a *China Doll* affidavit,[11] and subsequently awarded attorneys' fees to Father in the amount of $10,000 pursuant to A.R.S. § 25–324 (Supp.2010).

¶ 14 Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(C) (2003).

## ANALYSIS

### I.  Jurisdiction

¶ 15 Mother argues that the family court erred in concluding that Arizona retained exclusive, continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, or UCCJEA, for purposes of modification of the initial child custody order. Finding no error, we affirm.

¶ 16 We review *de novo* whether a court has subject matter jurisdiction under the UCCJEA. *See In re Marriage of Tonnessen,* 189 Ariz. 225, 226, 941 P.2d 237, 238 (App.1997) (addressing the predecessor statute, the Uniform Child Custody Jurisdiction Act); *see also Willie G. v. Ariz. Dep't of Econ. Sec.,* 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005) (stating that this court reviews *de novo* matters of statutory interpretation and mixed questions of fact and law).

¶ 17 In 2001, Arizona adopted the UC-CJEA, *see* A.R.S. §§ 25–1001 to –1067 (2007), a uniform statute adopted by the majority of states in an effort to resolve ambiguity and create consistency in interstate child custody jurisdiction and enforcement proceedings. *Melgar v. Campo,* 215 Ariz. 605, 606–07, ¶¶ 7, 10, 161 P.3d 1269, 1270–71 (App. 2007); *Welch–Doden v. Roberts,* 202 Ariz. 201, 208, ¶ 29, 42 P.3d 1166, 1173 (App.2002).

¶ 18 The conditions under which an Arizona court may exercise initial child custody jurisdiction are provided in A.R.S. § 25–1031. Additionally, A.R.S. § 25–1032 provides that an Arizona court has exclusive, continuing jurisdiction unless certain conditions are met:

A.  Except as [inapplicable here], a court of this State that has made a child custody determination consistent with § 25–1031 ... has exclusive, continuing jurisdiction over the determination until either of the following is true:

1.  A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships.

2.  A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

B.  A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determi-

---

**10.**  In evaluating the parties' credibility, the court found that Mother had "made a number of inconsistent statements and misstatements of fact" and had "exaggerated and/or fabricated allegations against [Father]," including claims of domestic violence and abuse, her claims related to pornography and the order of protection, and her claims of apparent neglect or abuse of the parties' daughter.  The court further found that Mother had "made false and misleading reports to CPS, law enforcement, and the Courts in an effort to [unreasonably] deny Respondent/Father

parenting time with the children" for 650 days. In contrast, the court found "Father's testimony to be credible and consistent with the record" with regard to the full payment of his child support obligation in a timely manner, parenting time missed, and his motives regarding the children's welfare.

**11.**  *See Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

nation only if it has jurisdiction to make an initial determination under § 25–1031.

¶ 19 As codified in Arizona, A.R.S. § 25–1032 reflects the UCCJEA's goal of allowing the court that makes the original custody determination to retain exclusive, continuing jurisdiction over that order. *Melgar*, 215 Ariz. at 607, ¶¶ 10–11, 161 P.3d at 1271 (recognizing that "[t]he rule of exclusive, continuing jurisdiction remains the jurisdictional lodestar until either the court that originated the order determines that the child's connection with the state is too attenuated or that the child *and* parents no longer reside in the state" (citations omitted)). With limited exceptions, "the decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, and no other." *Id.* at ¶ 11.

¶ 20 In this case, we find no error in the family court's decision to exercise exclusive, continuing jurisdiction. Mother previously affirmatively invoked the jurisdiction of the Arizona court pursuant to A.R.S. § 25–1031 when she filed for divorce, conceding at that time Arizona was the children's "home state." She and the children moved back to Arizona, where both parties and the children resided, and she continued to invoke the jurisdiction of the Arizona court system when it was convenient for her.

¶ 21 Although a statutory mechanism existed for Mother to seek to relocate with the children, *see* A.R.S. § 25–408, she has not shown that she followed that mechanism. Instead, she simply took the children to New Mexico, evaded service, and was soon thereafter found in contempt by the Arizona family court for failure to appear and failure to abide by the terms of the parties' custody and parenting time agreement. Mother continued to relocate while in New Mexico and continued to be in contempt of the Arizona court's orders. Thus, both Mother and the children have had and continue to have a significant connection with this state.

¶ 22 In the meantime, Father continues to reside in Arizona, where throughout the proceedings he has paid child support to Mother from his employment in this state, and he has provided health care insurance to the children through his employer in this state. Father testified that the children have friends in the Phoenix area, and he remains in close contact with the parents of his children's friends. Although substantial evidence is available in New Mexico concerning the children's care, protection, training, and personal relationships, it continues to exist in this state as well.

¶ 23 Moreover, Father asserts that no other court has sought jurisdiction over the child custody order, and Mother does not dispute Father's assertion or otherwise indicate that she at any time sought to invoke the jurisdiction of the New Mexico court. Instead, she filed numerous motions and petitions in the Arizona court prior to trial. We agree with the family court that Mother's reliance on the passage of time cannot otherwise undermine Arizona's home state jurisdiction when the entire time Mother has been subject to the Arizona court's orders and been in contempt of those orders. Mother cannot use her unauthorized conduct in removing the children from this state and defying the court's custody and parenting time orders to defeat jurisdiction.[12] *See generally Duwyenie v. Moran,* 220 Ariz. 501, 503–04, ¶ 9, 207 P.3d 754, 756–57 (App.2009).

¶ 24 We conclude that the family court did not err in determining that it had exclusive, continuing jurisdiction to modify its initial child custody order.

## II. The Family Court's Award of Attorneys' Fees

¶ 25 In awarding attorneys' fees to Father, the family court found that, despite a disparity between the financial resources of Mother and Father, an award of attorneys' fees was warranted because Mother had taken unrea-

---

12. We also disagree with Mother's contention that, in citing A.R.S. § 25–1031(A)(1) rather than A.R.S. § 25–1032, the court used the incorrect statute and standard to determine whether it should retain jurisdiction over the matter. Read in context, it appears that the court simply recog-

nized that initial child custody jurisdiction existed under A.R.S. § 25–1031(A)(1), and "[b]ased upon the May 14, 2010 findings made by Judge Hyatt," neither subsection (A)(1) nor subsection (A)(2) of A.R.S. § 25–1032 applied to defeat that jurisdiction.

sonable positions during the course of the proceedings:

The Court has considered the financial resources of each of the parties and the reasonableness of the positions taken by each party throughout the proceedings relating to the Petition to Modify Custody, Parenting Time and Child Support filed February 18, 2010.

Based upon the evidence presented at the time of the August 2, 2010 trial, the court finds that Petitioner/Mother has taken positions over the course of the litigation that are unreasonable. Specifically, the Court makes these findings with respect to misrepresentations and false allegations made by Petitioner/Mother in an effort to deny parenting time to Respondent/Father without good cause, as more fully set forth above.

The financial resources of the parties are disparate. Respondent/Father earns significantly more income than Petitioner/Mother. In consideration of the difference in the parties['] incomes the Court deviated from the child support guidelines so that Petitioner/Mother would not be required to pay any child support to Respondent/Father.

Under these circumstances, the Court would not ordinarily enter an order awarding attorneys' fees. However, in this case, the Court finds that Petitioner/Mother created obstacles over a period of two years to deny Respondent/Father a relationship with the children. Respondent/Father entered into two agreements with Petitioner/Mother over the course of these two years in an effort to gain back the right to see his children. First he requested mediation shortly after filing his 2008 Petition to Enforce Parenting Time. Respondent/Father made a good faith effort to resolve the parenting time issues. At the mediation, the parties reached an agreement, which was almost immediately breached by Petitioner/Mother before Respondent/Father could have even one visit in 2008. The parties again reached a number of agreements during the Court ordered parenting conference on May 14,

2010, which, as discussed more fully above, were breached by Petitioner/Mother.

Following the conference Petitioner/Mother sought and obtained a baseless order of protection for the purpose of denying Respondent/Father parenting time as ordered by Judge Hyatt on May 14, 2010. Petitioner/Mother's actions were in bad faith and she caused significant expense to Respondent/Father by unnecessarily expanding the litigation.

**The Court finds** that an award of attorneys' fees in favor of Respondent/Father is necessary and appropriate.

¶ 26 Mother argues that, in ultimately awarding attorneys' fees under A.R.S. § 25–324, the family court erred because the court dismissed the disparity between the parties' financial resources and, instead, based the award solely on the unreasonableness of her actions during the proceedings. We review for an abuse of discretion an award of attorneys' fees made under A.R.S. § 25–324. *See In re Marriage of Berger,* 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App. 1983). We find no abuse of the court's discretion.

¶ 27 Subsection (A) of A.R.S. § 25–324 provides as follows:

The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter or chapter 4, article 1 of this title. On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions. The court may make these findings before, during or after the issuance of a fee award.

(Footnote omitted.) Thus, contrary to Mother's contention, the plain language of the statute makes clear which factors a court must consider in determining whether an

award of attorneys' fees is appropriate. To award attorneys' fees under § 25–324, a court must consider "the financial positions of the parties," *Gerow v. Covill*, 192 Ariz. 9, 19, ¶ 46, 960 P.2d 55, 65 (App.1998), *and* "the reasonableness of the positions each party has taken throughout the proceedings." [13] A.R.S. § 25–324(A). In this case, the family court expressly considered each.

¶ 28 In deciding whether to award attorneys' fees, the family court was presented with and carefully considered evidence related to the financial resources of the parties, including the parties' testimony and affidavits of financial information filed by each party before trial.[14] Because the court balanced that information with its consideration of the unreasonableness of Mother's positions throughout the proceedings, we find no abuse of the court's discretion in awarding attorneys' fees to Father.

### III. Mother's Counsel's Brief

¶ 29 We also express extreme concern regarding two matters in the appellate briefs filed by Mother's counsel. First, as we have noted, in his opening brief, counsel states that Mother "moved to New Mexico with the children after filing a Notice to Move on May 19, 2008." The portion of the record relied on as support for this statement, however, is a notice filed on May 19, 2008, by the law firm representing Mother, which advised that the firm had moved to a new address in Phoenix. Further, we have found no document in the record otherwise supporting this statement to which Mother's counsel attaches significance. Whether counsel's misrepresentation of the record is the result of inadvertent sloppiness or is an intentional attempt to mislead the court, we cannot say.

Nevertheless, we remind counsel that he has a duty of candor to this court and a duty to certify that representations made to this court are accurate. *See* Ariz. R. Sup.Ct. 42, ER 3.3; Ariz. R. Civ. P. 11(a); *see also In re Ireland*, 146 Ariz. 340, 342, 706 P.2d 352, 354 (1985) (recognizing that an attorney has "an obligation not to mislead the court through an intentional omission" (citations omitted)).

¶ 30 Second, we note that, in making his argument on appeal, counsel for Mother explicitly relies on *In re Marriage of Cruz*, 2 CA–CV 2010–0013, 2010 WL 3365910 (Ariz. App. Aug. 26, 2010). Counsel failed to advise this court and opposing counsel that *Cruz* is an unpublished memorandum decision.[15] Rule 28(c), ARCAP, prohibits the citation of memorandum decisions as legal authority:

(c) **Dispositions as Precedent.** *Memorandum decisions shall not be regarded as precedent nor cited in any court* except for (1) the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case or (2) informing the appellate court of other memorandum decisions so that the court can decide whether to publish an opinion, grant a motion for reconsideration, or grant a petition for review. Any party citing a memorandum decision pursuant to this rule must attach a copy of it to the motion or petition in which such decision is cited.

(Emphasis added.) "A memorandum decision is a written disposition of a matter not intended for publication." ARCAP 28(a)(2).

¶ 31 We give no consideration to the memorandum decision relied on by Mother's counsel. *See Walden Books Co. v. Ariz. Dep't of Revenue*, 198 Ariz. 584, 589, ¶¶ 20–23, 12 P.3d 809, 814 (App.2000). Further, we

---

13. Nevertheless, "an applicant need not show both a financial disparity and an unreasonable opponent in order to qualify for consideration for an award." *Magee v. Magee*, 206 Ariz. 589, 591 n. 1, ¶ 8, 81 P.3d 1048, 1050 n. 1 (App.2004) (citing *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶¶ 27–29, 5 P.3d 911, 917 (App.2000)).

14. In fact, as the court referenced in its award of attorneys' fees, in determining child support the court demonstrated its cognizance of Mother's financial wherewithal when it exercised its discretion and deviated from the child support guidelines by reducing Mother's payment obli-

gation to "$0.00 (zero)," in an effort to "assist Petitioner/Mother's ability to pay her costs related to travel to exchange the children for parenting time."

15. When opposing counsel in the answering brief questioned the validity of *Cruz*, Mother's counsel attached a copy of the decision to the reply brief and again affirmatively relied on the decision to advance the merits of Mother's position, once more without advising or apparently even recognizing that *Cruz* was an unpublished decision.

caution counsel not to cite such decisions in the future except as allowed under the limited exceptions recognized in the rule.

*IV.  Costs and Attorneys' Fees on Appeal*

¶ 32 Father requests attorneys' fees on appeal pursuant to A.R.S. §§ 12–349 (2003) and 25–324.  After a thorough review of the record, including the testimony and financial affidavits filed by the parties, and consideration of the reasonableness of the positions taken by the parties throughout the proceedings, we award Father his costs and attorneys' fees on appeal pursuant to A.R.S. § 25–324, contingent on his compliance with Rule 21, ARCAP.  We also conclude that the award of attorneys' fees is appropriate as a sanction pursuant to Rule 25, ARCAP, based on Mother's counsel's misrepresentation of the record and reliance on a memorandum decision as legal authority.  Accordingly, to discourage like conduct in the future, responsibility for the award of attorneys' fees to Father shall be equal and joint and several between Mother and her appellate counsel.

## CONCLUSION

¶ 33 The family court's order is affirmed.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and SHELDON H. WEISBERG, Judge.