NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MARK M. HOVDA, *Petitioner/Appellant*,

*v.*

REBEKAH M. HOVDA, *Respondent/Appellee*.

No. 1 CA-CV 20-0033 FC
FILED 10-27-2020

Appeal from the Superior Court in Maricopa County
No. FN 2008-004298
The Honorable Margaret LaBianca, Judge

**AFFIRMED**

COUNSEL

John R. Zarzynski, Phoenix
*Counsel for Petitioner/Appellant*

The Cavanagh Law Firm PA, Phoenix
By Helen R. Davis, Nicholas J. Brown
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1 Mark Hovda ("Husband") appeals the superior court's orders (1) denying his petition to terminate or modify his spousal maintenance obligation to Rebekah Hovda ("Wife"), and (2) awarding her attorneys' fees. For the following reasons, we affirm.

## BACKGROUND

¶2 We view the evidence in the light most favorable to upholding the superior court's ruling on spousal maintenance. *Boyle v. Boyle*, 231 Ariz. 63, 65, ¶ 8 (App. 2012). After 31 years of marriage, the parties divorced in November 2009. The consent decree and accompanying property settlement agreement required Husband to pay Wife $3,500 in monthly spousal maintenance for an "indefinite duration" but the obligation "remain[ed] modifiable under A.R.S. §§ 25-319(B) and 25-327(A)."

¶3 At the time the decree was entered, Husband was self-employed, earning about $245,000 annually. The next year, Husband moved to Wisconsin and later took a position as regional manager at Quality Liquid Feeds ("QLF"). In January 2018, he transitioned from commission-based income to a $132,500 yearly salary at QLF. In addition to his salary, QLF pays Husband other sums, which he contends are "reimbursements" for work-related expenses. From January to July 2019, these payments averaged $4,492 per month.

¶4 In February 2018—just one month after Husband changed his compensation scheme—Husband petitioned to terminate or modify spousal maintenance, alleging his decreased income was a "substantial and continuing change of circumstances" since the 2009 decree. After an evidentiary hearing, the superior court denied Husband's petition for "fail[ing] to demonstrate a substantial and continuing change in circumstances warranting modification." The court found that Husband's income decreased from $245,000 at the time of dissolution to $132,500 in

January 2018.  It also found, however, that Husband failed to present sufficient evidence showing the purported monthly "reimbursements" from QLF aligned with "any actual out-of-pocket expenses he ha[d] incurred," and thus the court declined to limit Husband's income to his $132,500 salary.  The court also determined that any change in Husband's income did not render him financially unable to pay his current spousal maintenance obligation.  The court awarded attorneys' fees to Wife under A.R.S. § 25-324.  Husband timely appealed.

## DISCUSSION

¶5          We review for abuse of discretion the superior court's decisions as to whether (1) there has been a change in circumstances sufficient to modify a spousal maintenance award, and (2) to award attorneys' fees under A.R.S. § 25-324.  *See Linton v. Linton*, 17 Ariz. App. 560, 563 (App. 1972) (modification); *Mangan v. Mangan*, 227 Ariz. 346, 352, ¶ 26 (App. 2011) (fees).  An abuse of discretion "occurs if the record is devoid of competent evidence to support the decision."  *Amadore v. Lifgren*, 245 Ariz. 509, 513, ¶ 5 (App. 2018).  The burden of proving the changed circumstances falls on the party seeking modification.  *Id.*  We review the superior court's factual findings for clear error.  *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996).

### A.     Change in Circumstances

¶6          Husband argues the superior court abused its discretion by denying his petition because the evidence does not support numerous findings.  A spousal maintenance award "may be modified or terminated only on a showing of changed circumstances that are substantial and continuing."  A.R.S. § 25-327(A).  "The mere fact of reduction of income in and of itself is not a sufficient basis to justify modification of the decree." *Linton*, 17 Ariz. App. at 564.  The payor-spouse must also show an inability to pay the current spousal maintenance obligation.  *Id.*  Facts known or events foreseeable to the parties at the time of dissolution cannot serve as a basis for a change in circumstances.  *Id.* at 563.

### 1.     Decrease in Income

¶7          Husband argues the superior court erred by refusing to limit his income to $132,500.  The court's ruling stated in part:

> [T]he Court finds [Husband] receives approximately $4,492.00 per month from his employer.  [Husband] testified that the $4,492.00 per month is reimbursement for work expenses including meals with clients.  However, other than

his testimony, [Husband] provided no evidence that the reimbursements align with any actual out-of-pocket expenses he has incurred.[] Also unexplained by [Husband] is the source of $35,000 deposited into his bank account in April 2019.[] For these reasons, the Court declines to conclude that [Husband's] income is limited to his annual salary of $132,500.

(Footnotes omitted.) According to Husband, evidence does not support attributing $4,492 per month in additional income to him because he established these payments were reimbursements for work-related expenses. We disagree.

¶8 Husband testified the payments were reimbursements paid to him by QLF for various expenses, including travel, hotels, airfare, rental cars, fuel, and client lunches, and that they did not reduce his personal living expenses. But the superior court "is not bound to accept as true the uncontradicted testimony of an interested party." *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987). And the court did not explicitly attribute the entire $4,492 to Husband's income. Instead, the court said it would not *limit* his income to his $132,500 salary because Husband failed to offer evidence beyond his own testimony that the purported reimbursements "align[ed] with any actual out-of-pocket expenses he has incurred."

¶9 Husband contends nonetheless that his bank statements show he made payments on his credit card on certain dates and QLF paid him a similar amount on or nearly on the same day. These bank statements show the date, a general description, the transacting party, and the amount. But they do *not* show any specific expenses or indicate QLF's payments were for reimbursements; the description merely states "Qlty Liquid Feed Qlf Vendor." Beyond his self-interested testimony, Husband offered no evidence showing what work-related expenses he incurred, or that QLF was only reimbursing him for work-related expenses. Given the lack of corroborating evidence, the superior court was not required to blindly accept Husband's testimony, and it did not err in declining to find these payments were only for reimbursed work expenses.

¶10 Husband also argues the court "unfairly" used a higher $4,492 monthly average, calculated based on the most recent six months, rather than the full two-year period of tracked payments, which would have produced a lower monthly average of $2,643. Despite Husband's conclusory contention of "unfair[ness]," the court did not err by using the

more recent date range to calculate QLF's average monthly payments to Husband. *See Arturo D. v. Dep't of Child Safety*, 249 Ariz. 20, 25, ¶ 16 (App. 2020) ("We defer to the [superior] court's ability to weigh and analyze the evidence.").

**¶11**     Next, Husband argues "[t]he evidence clearly established" he presented uncontradicted testimony that QLF reimbursed his rent and the court should have excluded it from his income. At trial, Husband testified he rents a house in Casa Grande, where he lives while working in Arizona, and that QLF reimburses him $960 in monthly rent.

**¶12**     In its ruling, the superior court explained that although Husband's bank statements indicate he a made "some monthly payments of about $1,000" for an Arizona residence that could have been the lodging Father referenced in his testimony, the record was not clear on that point. Again, Husband fails to point to any evidence, other than his own testimony, showing that QLF *specifically* reimbursed him for his Arizona rent. The court was not required to accept this testimony, and we defer to the court's factual finding. *See Aries*, 153 Ariz. at 261.

**¶13**     In addition, Husband argues the superior court erred when it considered a $35,000 deposit into Husband's bank account in April 2019 as another reason not to limit his income to $132,500. In making this determination, the court stated: "Also unexplained by [Husband] is the source of $35,000 deposited into his bank account in April 2019." Husband contends he explained it when he testified he and his family cashed in a shared account. Nonetheless, the court was free to reject his explanation. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) ("We will defer to the trial court's determination of witnesses' credibility . . . .").

**¶14**     In sum, the superior court's refusal to limit Husband's income to $132,500 was not clear error. *See Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (superior court may count regular gifts as income); *cf. Strait v. Strait*, 223 Ariz. 500, 502, ¶ 8 (App. 2010) (gross income for child-support purposes includes not just gross income on tax returns, but also cash-like benefits received which are "available for expenditures").

## 2.     Ability to Pay

**¶15**     Husband also argues the superior court erred by finding he was able to pay the current spousal maintenance obligation. A payor-spouse must show an inability to pay to warrant modifying spousal maintenance. *See Linton*, 17 Ariz. App. at 564.

**¶16** Here, the court could have reasonably concluded that because of QLF's additional payments to Husband, coupled with evidence regarding Husband's spending habits, he failed to prove an inability to pay. The record supports the court's findings that Husband spends $1,000 a month on food and household supplies and donates thousands per year to charities, because he admitted this at trial. Husband and his current wife's 2018 joint tax return shows that his household donated about $19,000 to charity, but he offered no evidence other than his affidavit and testimony of what he *personally* donated — he testified in one instance, $5,000 per year, and in another instance, less than $500 per month.

**¶17** Although Husband argues the superior court erred when it opined that his monthly food expenses of $1,020 seemed "very high" for one person, Husband agreed at trial he was "spending over $1,000 a month on food and household supplies." To the extent a factual dispute existed as to whether the $1,000 food expense included only Husband or both him and his current wife, the court had discretion to resolve it. *See Gutierrez*, 193 Ariz. at 347.

**¶18** Husband also attempts to factually distinguish *Linton*, 17 Ariz. App. 560, but the factual differences between this case and *Linton* are irrelevant to the superior court's decision. Unlike the circumstances in *Linton*, *see id.* at 562–64, the court in this case did not rely on how long Husband waited to petition for modification, conclude he voluntarily reduced his income, or suggest Husband only speculated about an expected decrease in income. Despite any factual differences, *Linton*'s legal requirements to modify spousal maintenance remain the same, and Husband fell short of proving those requirements. *See id.* The record supports the superior court's finding that Husband was able to pay.

### B. Wife's Circumstances

**¶19** Husband next argues the superior court erred by failing to consider Wife's circumstances in its ruling denying modification. The criteria in determining whether to modify spousal maintenance "are the same as the criteria considered in making a determination as to the reasonableness of an award for support and maintenance at the time of the original decree," including the payee-spouse's financial conditions, needs, and ability to produce a sufficient income for him- or herself, and the payor-spouse's ability to provide support. *Id.* at 562 (citation omitted); *see also* A.R.S. § 25-319(B) (listing factors).

¶20        Although the superior court did not explicitly consider Wife's circumstances in its ruling, "we will affirm the trial court if its ruling was correct for any reason." *In re Marriage of Gibbs*, 227 Ariz. 403, 409, ¶ 16 (App. 2011).  Here, the record supports the court's ruling denying modification.  As for Wife's financial condition and needs, Wife testified her expenses have risen significantly in the past year and her insurance premiums have more than doubled since 2010.  Her monthly expenses were $5,060 and her monthly income from employment was $980.  She also testified her home and car need repairs, that she could not afford to hire help to remove snow last winter, and that she "tr[ies] to live very frugally."   Husband argues Wife's assets awarded to her at dissolution had increased in value and thus improved her financial situation, but Wife testified that without spousal maintenance, she would "not be able to financially support [herself]" and she would deplete her assets after only three years.

¶21        As for Wife's ability to produce sufficient income for herself, Wife worked part-time at the time the decree was entered, as well as at the time of the 2019 evidentiary hearing.  She also suffers from a medical condition that hampers her daily activities, which would make full-time employment difficult.  Finally, as for Husband's ability to support Wife, we have already concluded he failed to show an inability to pay in light of his spending habits and charitable contributions.  *See supra* at ¶¶ 16–17.  Because Wife's circumstances supported the superior court's ruling, no error occurred.

¶22        Husband seems to suggest the superior court erred by failing to analyze each of the statutory factors relating to spousal maintenance set forth in A.R.S. § 25-319.  Both Husband and Wife made timely requests for findings of fact and conclusions of law; however, we conclude Husband waived any challenge to the adequacy of the court's findings on this basis because he did not file a post-judgment motion raising the issue.  *See Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990) (holding that a "litigant must object to inadequate findings of fact and conclusions of law at the trial court level so that the court will have an opportunity to correct them. . . .  Failure to do so constitutes waiver.").

¶23        In conclusion, the court did not abuse its discretion in denying Husband's petition to terminate or modify spousal maintenance because he failed to meet his burden of showing a substantial and continuing change in circumstances.

### C.     Attorneys' Fees

**¶24**         Husband argues the superior court abused its discretion by awarding Wife $42,700 in attorneys' fees under A.R.S. § 25-324. The court awarded fees because a substantial disparity of financial resources existed between the parties and Husband acted unreasonably during litigation. Because Husband did not object to Wife's fee application in the superior court, he has waived this issue on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300–01 (1994). We therefore affirm the court's award of attorneys' fees.

## CONCLUSION

**¶25**         For the foregoing reasons, we affirm the superior court's denial of Husband's motion to terminate or modify spousal maintenance and its award of attorneys' fees. Wife has requested attorneys' fees incurred in this appeal pursuant to A.R.S. § 25-324(A). In our discretion, and subject to her compliance with ARCAP 21, we award Wife a portion of her reasonable attorneys' fees, recognizing that she has already been awarded $10,000 for fees incurred "in furtherance of this appeal" as noted in the superior court's stipulated order. We also award taxable costs to Wife upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:     AA