NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MICHELLE L. PRINCIPE, *Petitioner/Appellant*,

*v.*

DAVID M. BLEVINS, *Respondent/Appellee*.

No. 1 CA-CV 20-0413 FC
FILED 6-3-2021

Appeal from the Superior Court in Maricopa County
No. FC2015-008129
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED IN PART AND VACATED IN PART**

COUNSEL

Michelle L. Principe, Denver, CO
*Petitioner/Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

¶1 Petitioner Michelle L. Principe (Mother) appeals the superior court's order modifying legal decision-making authority and parenting time orders set forth in the decree of dissolution. Mother has not shown that the court erred in modifying the decree. The court, however, erred by ordering Mother to complete and pay for a psychological evaluation (without considering her ability to pay) before it would consider another petition to modify. Accordingly, that requirement is vacated.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother and David Michael Blevins (Father) have one child, born in 2009. When the parties divorced in 2011, all three lived in Arizona. The decree awarded joint legal decision-making authority, gave primary physical custody to Mother and parenting time to Father. Father later moved to Utah. In September 2017, the parties agreed that the child would live in Utah with Father, stepmother and their children for the 2017–2018 school year. The child visited Mother in Arizona a few times, including for spring break in March 2018.

¶3 In March 2018, Mother received a report that Father and stepmother punished the child by slapping her, confining her to a bedroom except for school and taking away her mattress. Mother relayed the report to the Arizona Department of Child Safety (ADCS). Mother also refused to return the child to Utah and filed a modification petition requesting sole legal decision-making authority and supervised parenting time for Father. An ADCS investigation addressed the report Mother provided as well as alleged sexual abuse. After a forensic interview, ADCS concluded the allegations were unsubstantiated and took no action.

¶4          In June 2018, the court appointed an advisor (CAA) to make recommendations regarding the child's best interests. Later that month, Mother indicated she was willing to send the child back to Utah and give up her parental rights. On June 27, 2018, without prior notice to Father, Mother put the child on a late-night flight to Utah and sent Father a text message telling him she was sending the child back. Mother claimed she did so because she was financially destitute and had no option. However, Mother objected when Father attempted to formalize this arrangement and proposed joint legal decision-making, with Father having primary custody in Utah and Mother having long-distance parenting time, with the cost of travel split equally.

¶5          At an August 2018 hearing, Mother explained that she had been "on the edge of a nervous breakdown when she elected to relinquish the child back to Utah voluntarily" in late June 2018. Mother had lost her job and unemployment benefits, and her utilities had been shut off. The CAA expressed concern about Mother's mental health and about awarding unsupervised parenting time based on what had happened. The CAA stated that she had not interviewed Mother because Mother was unable to pay the CAA's fees. The court then granted Mother a waiver for the CAA's fees.

¶6          Father asked to have Mother submit to a psychological evaluation at Mother's expense, subject to reallocation of the expense after the evaluation. Mother objected, arguing that the evaluation was unnecessary, and she could not afford it. The court, however, granted Father's request. Mother then moved to Colorado. At a January 2019 status conference, Mother again objected that the psychological evaluation was unnecessary, and she could not afford it. The court, however, reaffirmed its prior order.

¶7          In April 2019, Mother filed a motion for temporary orders because the court had not yet scheduled a hearing on her April 2018 petition to modify. The court held an evidentiary hearing in May 2019 and issued temporary orders granting Father sole legal decision-making authority. The court found supervised parenting time was necessary based on Mother's behavior. The court found Mother's behavior still warranted "a full[-]scale psychological evaluation to determine the extent to which she can parent." Mother unsuccessfully moved to amend this order, again claiming that she could not afford the evaluation.

¶8          Ultimately, in March 2020, the court held an evidentiary hearing on Mother's April 2018 petition. After receiving the evidence, the court found a significant and continuing change of circumstances warranted modification, granted Father sole legal decision-making authority and ordered that Mother have supervised parenting time in Utah for up to four hours per month. The court stated that it would consider a petition to modify after Mother completed six consecutive months of supervised parenting time *and* "a full[-]scale psychological evaluation conducted by a court approved psychologist demonstrating her fitness to parent." The court also ordered Mother to pay $569 per month in child support. Mother filed a timely notice of appeal from that order. Mother later filed several post-order motions that she included in an amended notice of appeal. This court has appellate jurisdiction over these post-decree orders resolving all of the relief sought in Mother's April 2018 post-decree petition pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(2) (2021).[1]

¶9          In January 2021, while this appeal was pending, Mother filed several more motions and petitions, including to modify legal decision-making, parenting time and child support, alleging another incident of abuse by stepmother. After a conference later in January 2021 with the Utah court (where related proceedings were and apparently are pending), the Arizona superior court relinquished jurisdiction to the Utah court and dismissed "all pending pleadings" in Arizona. Mother's challenge to that order is pending in a separate appeal in 1 CA-CV 21-0187 FC.

### DISCUSSION

I.     **The Superior Court Had Continuing Exclusive Jurisdiction to Rule on the April 2018 Petition to Modify.**

¶10          Mother argues that the superior court lacked jurisdiction to rule on her April 2018 petition to modify. Mother contends that Arizona was not the child's home state when she filed the April 2018 petition and that, by October 2018, Mother, Father and the child had moved out of Arizona. Whether the court had subject matter jurisdiction under Arizona's

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. Although Father's failure to file an answering brief could be considered a confession of error, the court is not required to view it as such, particularly when the best interests of a minor child are at issue. *See In re Marriage of Diezsi*, 201 Ariz. 524, 525 ¶ 2 (App. 2002).

4

version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is an issue this court reviews de novo. *Mangan v. Mangan*, 227 Ariz. 346, 350 ¶ 16 (App. 2011).

¶11 Because Arizona issued the original custody order, it has continuing, exclusive jurisdiction to modify that order until either of the following is true:

> 1. A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships. [or]

> 2. A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

A.R.S. § 25-1032(A). This statute "reflects the UCCJEA's goal of allowing the court that makes the original custody determination to retain exclusive, continuing jurisdiction over that order." *Mangan*, 227 Ariz. at 351 ¶ 19.

¶12 In April 2018, when Mother filed the petition that initiated these proceedings, she still lived in Arizona. Thus, the fact that Arizona might not have been the *child*'s home state in April 2018 did not deprive Arizona of jurisdiction under § 25-1032(A) because Mother still lived here. Nor did Mother's subsequent move from Arizona to Colorado deprive the court of jurisdiction, given that Mother lived in Arizona when she filed the petition. "Jurisdiction attaches at the commencement of a proceeding." Unif. Child Custody Jurisdiction and Enf't Act § 202 cmt. 2, U.L.A. 26 (1997). Thus, the superior court had jurisdiction to rule on Mother's April 2018 petition.

## II. The Superior Court Did Not Ignore Allegations of Child Abuse and Neglect.

¶13 This court reviews legal decision-making and parenting time orders for an abuse of discretion, accepting the superior court's findings of fact absent clear error. *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018). "A finding of fact cannot be 'clearly erroneous' if there is substantial evidence to support it, even though there might be substantial conflicting

evidence." *Moore v. Title Ins. Co. of Minn.*, 148 Ariz. 408, 413 (App. 1985). The superior court at trial, not this court on appeal, weighs and assesses credibility and conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998). Although conflicting evidence may exist, the superior court's ruling will be affirmed if substantial evidence supports it. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009).

¶14         Where legal decision-making or parenting time is contested, the court "shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best-interests of the child." A.R.S. § 25-403(B). One of the factors relevant to determining the child's best interests is whether there has been domestic violence. A.R.S. § 25-403(A)(8) (citing § 25-403.03). Therefore, the court must consider whether there has been domestic violence as defined by § 25-403.03(C). *DeLuna v. Petitto*, 247 Ariz. 420, 423 ¶ 11 (App. 2019).

¶15         The court made detailed findings about each statutory factor and found that allegations of child abuse asserted in the April 2018 petition were not supported. Mother contends the court ignored evidence of punishments that constitute child abuse. She argues that the court failed to address (1) Father and stepmother taking the child's bed away as a punishment, (2) a police report stating stepmother cut the child's cheek and (3) Father's failure to place the child in therapy when recommended by a doctor.[2] Although the findings did not address these specific allegations, the failure to reference this evidence does not establish, as Mother argues, that the court did not consider it. Rather, the court found Mother's allegations of abuse were not credible and weighed them accordingly. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55–56 ¶ 18 (App. 2004) (appellate courts presume the superior court fully considered evidence admitted at trial).

¶16         Mother challenges the weight the court attributed to the evidence that Father took away the child's bed as a punishment. Father admitted he did this for one night and that Utah child safety workers told him it was inappropriate. Father's testimony and the records show that Utah authorities investigated this incident, instructed Father it was inappropriate and closed the case without further action. Viewing the

---

[2] Mother's statement of facts in her brief on appeal contains many other allegations and disputes the evidence and post-hearing rulings. Because those assertions were not properly raised or developed, they are not considered here. *See* ARCAP 13(a)(7) (arguments in opening brief must contain supporting contentions, legal authorities, and record citations).

evidence in the light most favorable to upholding the superior court's order, Mother has not shown that the court abused its discretion in addressing this assertion. *See Hurd*, 223 Ariz. at 52 ¶ 16; *Gutierrez*, 193 Ariz. at 347 ¶ 13.

¶17        Contrary to Mother's assertion, the police report regarding stepmother cutting the child's cheek was admitted into evidence. The court also reviewed the child's therapy records and heard testimony regarding the child's progress in therapy. As of January 2019, the child was stable and her behavior improving, so Father stopped her therapy sessions. At the time of the evidentiary hearing, the child was again seeing a counselor upon the recommendation of the CAA (and as Mother had requested) and was doing well. Although the court did not discuss this evidence, it is presumed to have considered all admitted evidence, *Fuentes*, 209 Ariz. at 55–56 ¶ 18, and this court defers to the weight it afforded the evidence, *Hurd*, 223 Ariz. at 52 ¶ 16. Accordingly, Mother has not shown the court ignored evidence of child abuse.

### III.    The Court Erred in Failing to Consider Mother's Ability to Pay for a Psychological Evaluation and Improperly Restricted Her Ability to File a Petition to Modify Parenting Time.

¶18        In September 2018, the superior court ordered Mother to undergo a psychological evaluation at her expense. The order did not specify that Mother was obligated to pay for the entire cost of the psychological evaluation, but this is implied because Father asked to have Mother pay for the evaluation "subject to reallocation." The court also ordered supervised parenting time for Mother.

¶19        The final order required Mother to pay all costs associated with her long-distance, supervised parenting time and ordered Mother to complete "a full[-]scale psychological evaluation . . . demonstrating her fitness to parent." The order stated that Mother must complete the evaluation before the court "will entertain a motion to modify parenting time." Mother contends these orders are not necessary and place an unfair financial burden on her ability to exercise parenting time.

¶20        By requesting a custody modification, Mother placed her mental health at issue given that consideration of the parties' mental health is required by statute. A.R.S. § 25-403(A)(5); *In re Marriage of Gove*, 117 Ariz. 324, 328 (App. 1977). Moreover, the record supports the order for both supervised parenting time and a psychological evaluation based on Mother's behavior, correspondence with Father and the CAA report.

¶21 As to the financial burden of supervised parenting time, the order allowed a mutually agreed upon person to supervise. Presumably, this will reduce the cost. Mother suggests that Father has unreasonably increased the cost of supervised parenting time by refusing to allow family members to supervise, but she failed to cite to any evidence of this in the record. At trial, Mother referred to one incident when the child visited Arizona without her knowledge but did not establish that she lived in Arizona at that time.

¶22 Mother also argues that, under Arizona Rule of Family Law Procedure (Rule) 51, Father must pay for the psychological evaluation because he requested it under Rule 63. Rule 51(b)(4)(C) requires that, absent "manifest injustice," the party requesting discovery under Rule 63 from an expert witness shall pay for the expert's time. Although Father's motion cited Rule 63, the superior court ordered the evaluation to determine what custody arrangement and parenting time was in the child's best interests. Therefore, this order anticipated an evaluation from a neutral psychologist to determine the child's best interests, not an "expert" hired by a party for discovery purposes. Therefore, Rule 51 is inapplicable here.

¶23 The order for a psychological evaluation is authorized by Rule 95(b), which allows the court to order parties to engage in behavioral health services. However, under Rule 95(a), the court "must determine on the record whether the parties have the ability to pay for services as well as allocate the costs of those services." The court did not do so here.

¶24 Mother repeatedly asserted that she is unable to pay for a psychological evaluation. In other ways, the court credited Mother's inability to pay for various costs, including granting a fee waiver due to Mother's financial circumstances when she could not pay the CAA's fees. At the time of trial, Mother was on disability, earning $3,000 per month. Father's financial affidavit showed that he earned between $8,000 and $9,000 a month. The court's findings, however, did not address the parties' financial circumstances as required by Rule 95(a), nor did the court consider reallocating the cost of the evaluation as Father suggested in his original motion. In short, the court was aware that Mother had been unable to pay for the evaluation from the outset but did not address that issue when it again ordered Mother to pay for a comprehensive psychological evaluation.

¶25 The order also stated that the court would not entertain a petition to modify parenting time until Mother completed the evaluation. To the extent this order restricts Mother's ability to file a petition to modify, it violates § 25-411(A), which allows a petition to modify legal decision-making or parenting time any time "there is reason to believe the child's present environment may seriously endanger the child's physical, mental, moral or emotional health." A party may also file a petition to modify at any time if there is evidence of domestic violence or abuse. *Id.* However, a parent must wait six months to file a petition based on the other parent's failure to comply with court orders. *Id.*

¶26 The statutory requirements balance the competing interests of "the need for stability in the child's life versus the need to change a previous order if that is necessary to place the child in a more suitable environment." *Canty v. Canty*, 178 Ariz. 443, 447 (App. 1994). The order improperly imposed additional requirements by requiring Mother to complete the evaluation before filing a petition to modify. To the extent that the order was an effort to compel Mother to undergo an evaluation, compliance can be compelled in other ways that do not also limit Mother's statutory right to file a petition to modify. Alternatives include a petition to enforce or a motion for contempt under Rules 91(b) or 92. Accordingly, this pre-filing requirement was improper and is vacated.

¶27 The superior court properly ordered supervised parenting time and a psychological evaluation of Mother. But the court erred by ordering Mother to pay the entire cost of the psychological evaluation without considering the parties' financial resources, including under Rule 95. The court also erred by requiring Mother to complete "a full [-] scale psychological evaluation" before the court would "entertain a motion to modify parenting time." Accordingly, those portions of the order are vacated.

**CONCLUSION**

**¶28**     The order modifying legal decision-making and parenting time is affirmed. Those portions of the order requiring Mother to pay for and complete a psychological evaluation, and that she complete the evaluation before she can file a petition to modify, are vacated.

**¶29**     Given the pendency of Mother's appeal (1 CA-CV 21-0187 FC) challenging the superior court's January 2021 relinquishment of jurisdiction to the Utah court and dismissal of "all pending pleadings" in Arizona, a copy of this memorandum decision (and, when issued, the mandate) should be provided to:

> Second Judicial District Court
> In and for Weber County, State of Utah, Ogden
> Department
> 2525 Grant Avenue
> Ogden, UT  84401
> Case No. 204901284
> **Attention:**  The Honorable Jennifer Valencia, Judge, and The Honorable Catherine Conklin, Commissioner

